CREATIVE TECHNOLOGY, LTD.,
a Singapore corporation,
Plaintiff–Appellant,

v.

AZTECH SYSTEM PTE, LTD, a Singapore corporation; Aztech Labs, Inc., a California corporation, Defendants–Appellees.

No. 93–16997.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 10, 1995.

Decided July 24, 1995.

Robert A. Van Nest, Keker, Brockett & Van Nest, San Francisco, CA, and Joel Linzer, Crosby, Heafey, Roach, & May, Oakland, CA, for plaintiff-appellant.

William S. Coats, Carolyn F. Bostick, and Sarah W. Anderson, Brown & Bain, Palo Alto, CA, for defendants-appellees.

Before: FLOYD R. GIBSON,* HUG, and FERGUSON, Circuit Judges.

Opinion by Judge FLOYD R. GIBSON; Dissent by Judge FERGUSON.

FLOYD R. GIBSON, Senior Circuit Judge.

Creative Technology appeals the district court's *forum non conveniens* dismissal of its copyright infringement action. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 (1988), and we affirm.

## I. BACKGROUND

Appellant Creative Technology, Ltd. (Creative) and Appellee Aztech Systems Pte. Ltd. (Aztech) are competing Singapore corporations in the business of developing, man-

---

* The HONORABLE FLOYD R. GIBSON, Senior Judge for the Eighth Circuit Court of Appeals, sitting by designation.

ufacturing, and distributing sound cards.[1] Both Aztech's and Creative's principal place of business is Singapore. All the sound cards are designed, developed, and manufactured in Singapore. Creative markets its sound cards in the United States under the brand name "Sound Blaster" through Creative Labs, Inc., a California corporation and wholly owned subsidiary. Aztech, in turn, markets its sound cards in the United States under the brand name "Sound Galaxy" through Appellee Aztech Labs, Inc. (Aztech Labs), another California corporation and wholly owned subsidiary.

The present action arises from a protracted copyright dispute between Creative and Aztech. The first round of copyright litigation erupted in November of 1992 when Creative, which holds twelve registered United States copyrights in its Sound Blaster series, publicly accused Aztech of infringing on its copyrighted material through the manufacture and distribution of Aztech's Sound Galaxy series. Aztech filed the equivalent of a declaratory relief action in Singapore under the Singapore Copyright Act, ultimately resulting in a settlement agreement on December 7, 1992.

Following the repudiation of this agreement, Creative filed suit in the United States District Court for the Northern District of California, claiming that Aztech's reproduction, adaptation, and United States distribution of "Sound Blaster clones" violated Creative's exclusive rights under 17 U.S.C. §§ 106 and 501 (1988) of the United States Copyright Act. Aztech responded by filing an action against Creative in the High Court of Singapore, alleging breach of the settlement agreement and seeking declaratory relief once again under the Singapore Copyright Act. Creative, in turn, filed mandatory counterclaims in Singapore alleging copyright infringement based on the manufacture of "Sound Blaster clones" in Singapore and their distribution abroad. Aztech Labs has consented to Singapore jurisdiction and is now a party to the ongoing Singapore action.

Aztech filed a motion to dismiss the United States action under the *forum non conveniens* doctrine. The district court granted Aztech's motion, concluding that Singapore offered an adequate alternative forum and that the balance of public and private interest factors favored dismissing the action in favor of adjudication in Singapore. Creative appeals.

## II. DISCUSSION

The party moving for *forum non conveniens* dismissal must demonstrate two things: (1) the existence of an adequate alternative forum; and (2) that the balance of relevant private and public interest factors favor dismissal. *Contact Lumber Co. v. P.T. Moges Shipping Co. Ltd.*, 918 F.2d 1446, 1449 (9th Cir.1990) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947)). Creative raises three primary issues on appeal: (1) whether the district court erred in concluding that the *forum non conveniens* doctrine applies to the United States Copyright Act; (2) whether the district court abused its discretion in concluding that the High Court of Singapore will provide an adequate alternative forum; and (3) whether the district court abused its discretion in determining that the balance of relevant public and private interest factors favors dismissal. The scope of our review is narrow:

> The *forum non conveniens* determination is committed to the sound discretion of the trial court. It may be reversed only when there has been a clear abuse of discretion; where the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference.

*Ceramic Corp. of America v. Inka Maritime Corp.*, 1 F.3d 947, 949 (9th Cir.1993) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257, 102 S.Ct. 252, 266, 70 L.Ed.2d 419 (1981)).

### A. Applicability of the *Forum Non Conveniens* Doctrine

The *forum non conveniens* doctrine is inapplicable to certain federal statutes

---

1. A peripheral hardware device designed to enhance a computer's ability to produce sounds.

such as the Jones Act[1] or the Federal Employers' Liability Act[2] (FELA) which contain special provisions mandating venue in the United States district courts. *Zipfel v. Halliburton Co.,* 832 F.2d 1477, 1487 (9th Cir. 1987), *cert. denied,* 486 U.S. 1054, 108 S.Ct. 2819, 100 L.Ed.2d 921 (1988). Because of this, a choice of law determination must be made before the district court dismisses an action under the *forum non conveniens* doctrine. *Pereira v. Utah Transp., Inc.,* 764 F.2d 686, 688 (9th Cir.1985), *cert. dismissed,* 475 U.S. 1040, 106 S.Ct. 1253, 89 L.Ed.2d 362 (1986). Creative argues that its claim is governed exclusively by the United States Copyright Act, 17 U.S.C. § 101 *et seq.* (1988). As a result, Creative contends that the *forum non conveniens* doctrine is inapplicable to its claim because 28 U.S.C. § 1338(a)[3] invests the federal district courts with "exclusive" jurisdiction over claims arising under the United States Copyright Act.

Regardless of which nation's law applies, Creative's argument is without merit. The inapplicability of the *forum non conveniens* doctrine to the Jones Act and FELA is based on "[a] privilege of venue, granted by the legislative body which created this right of action...." *Baltimore & Ohio R.R. Co. v. Kepner,* 314 U.S. 44, 54, 62 S.Ct. 6, 10, 86 L.Ed. 28 (1941). As the Eleventh Circuit explained in *La Seguridad v. Transytur Line,* 707 F.2d 1304 (11th Cir.1983), "[t]he court must ascertain if there is anything about the specific federal statute which indicates that Congress implicitly spoke to, and rejected, the application of *forum non conveniens* doctrine to a suit thereunder." *Id.* at 1310 n. 10. 28 U.S.C. § 1338(a) is not the same type of mandatory venue provision found in either the Jones Act or FELA. That statute merely states that United States district courts shall have exclusive

jurisdiction of United States copyright claims over state courts.

Our conclusion is reinforced by this Court's previous decision in *Lockman Found. v. Evangelical Alliance Mission,* 930 F.2d 764 (9th Cir.1991). In that decision, the plaintiff brought an action for certain noncopyright claims and for copyright infringement under both United States and Japanese law. *Id.* at 766. Following the *forum non conveniens* dismissal of its complaint by the district court, the plaintiff appealed both the dismissal of its noncopyright claims and the district court's refusal to allow it to amend its complaint to drop the copyright claims. *Id.* This Court affirmed both the district court's *forum non conveniens* dismissal and its decision to deny the plaintiff's motion to amend its complaint, concluding that the copyright and non-copyright claims were too closely intertwined to be severed. *Id.* at 772. Based on an analysis of the complaint as a whole, including the copyright claims, we concluded that "[i]n this case, there is no arguably applicable law that would end the forum non conveniens inquiry, so no potentially dispositive choice of law determination need have been made." *Id.* at 771. We believe this statement of the law to be equally applicable to the instant case.

The dissent inaccurately faults our decision for failing to take the principle of national treatment into account. Both the Universal Copyright Convention (U.C.C.) and the Berne Convention for the Protection of Literary and Artistic Works (Berne) mandate a policy of national treatment in which copyright holders are afforded the same protection in foreign nations that those nations provide their own authors. *See* U.C.C. Art. II; Berne, Art. V. The dissent accurately points out that the principle of national treatment implicates a rule of territoriality in

---

**1.** "Jurisdiction in [actions under the Jones Act] shall be under the court of the district in which the defendant employer resides or in which his principal office is located." 46 U.S.C.App. § 688(a) (1988).

**2.** "Under this chapter an action may be brought in a district court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of

commencing such action." 45 U.S.C. § 56 (1988).

**3.** "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trade-marks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases." 28 U.S.C. § 1338(a) (1988).

which "'[t]he applicable law is the copyright law of the state in which the infringement occurred, not that of the state of which the author is a national or in which the work was first published.'" *Subafilms, Ltd. v. MGM–Pathe Comm.*, 24 F.3d 1088, 1097 (9th Cir. 1994) (en banc) (quoting 3 David Nimmer and Melville B. Nimmer, Nimmer on Copyright § 17.05 at 17–39 (1994)).

█ The law of this forum, however, includes the *forum non conveniens* doctrine. The dissent argues that "the principle of national treatment requires that United States copyright law be applied in order to remedy infringing conduct that occurred in the United States." Post at 706. We do not agree with this sweeping conclusion. National treatment and territoriality are choice of law principles, *See Subafilms*, 24 F.3d at 1097; 3 Nimmer, *supra* § 17.05 at 17–39, and do not preclude the application of the *forum non conveniens* doctrine merely because a foreign author alleges copyright violations occurring within our borders. National treatment merely requires this Court to grant Creative the same copyright protection enjoyed by American authors. The dissent seems to imply that national treatment confers a special immunity from *forum non conveniens* analysis on foreign copyright plaintiffs. But United States nationals alleging violations of United States copyright law are subject to *forum non conveniens* analysis. We believe that the concepts of national treatment and territoriality require that foreign copyright holders be subject to the same standards, no more, no less.

## B. Adequate Alternative Forum

█ The first step in *forum non conveniens* analysis is the determination of whether an adequate alterative forum exists. *Piper*, 454 U.S. at 254, 102 S.Ct. at 265. The key determination is whether "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all." *Id.* This requirement is

generally satisfied if the defendant is amenable to service of process in the alternative forum. *Id.* at n. 22. In this case, all parties are either subject to or have submitted to the jurisdiction of the High Court of Singapore. More may be required, however, in "rare circumstances" where the remedy offered by the alternative forum is "clearly unsatisfactory." The Supreme Court has described such an inadequate forum as one which "does not permit litigation of the subject matter of the dispute." *Id.*

Creative argues that because the reach of the Singapore Copyright Act is limited to infringing acts occurring within Singapore,[4] the High Court of Singapore is unable to grant Creative any relief for the alleged acts of copyright infringement arising from Creative's distribution of "Sound Blaster clones" within the United States. Creative further argues that 28 U.S.C. § 1338(a)'s grant of "exclusive" jurisdiction to the United States district courts over claims brought under the United States Copyright Act prevents the High Court of Singapore from applying United States copyright law to supplement the remedies afforded under the Singapore Copyright Act.

We reject Creative's argument on both fronts. We conclude that the Singapore Copyright Act offers Creative an adequate alternative remedy independent of United States copyright law. Even if it did not, we further conclude that the High Court of Singapore would be free to apply United States copyright law to Creative's counterclaim should the need arise.

### 1. Adequacy of Remedies under the Singapore Copyright Act

█ The *forum non conveniens* doctrine does not guarantee the plaintiff its choice of law, or even that United States law will be applied in the alternative forum. *See Lockman*, 930 F.2d at 768–69; *Zipfel*, 832 F.2d at 1484–85. "A court may dismiss on forum non conveniens grounds even though the for-

---

4. Section 31(1) of the Singapore Copyright Act provides:

> Subject to this Act, the copyright in a literary, dramatic, musical or artistic work is in-

fringed by a person who, not being the owner of the copyright, and without the license of the owner of the copyright, does in Singapore, or authorises the doing in Singapore of, any act comprised in the copyright.

eign forum does not provide the same range of remedies as are available in the home forum. However, the alternative forum must provide some potential avenue for redress." *Ceramic Corp.,* 1 F.3d at 949 (citation omitted).

■ Creative's claim that the territorial limits of the Singapore Copyright Act renders the High Court of Singapore incapable of protecting Creative's United States copyrights interests is belied by the scope of Creative's own Singapore counterclaim. That counterclaim seeks both monetary and permanent injunctive relief for all alleged acts of infringement arising from both the development of the "Sound Blaster clones" in Singapore and their distribution abroad. We conclude that the High Court of Singapore is capable of granting Creative the relief it seeks despite the territorial limitations of the Singapore Copyright Act.

First, lack of extraterritorial reach should not prevent the High Court of Singapore from subsuming the amount of damages incurred by Aztech Labs' alleged illegal distribution of pirated sound cards within the United States in the amount of damages awarded under the Singapore Copyright Act for Aztech's alleged infringing acts occurring in Singapore. The Second Circuit did exactly that in *Update Art, Inc. v. Modiin Pub., Ltd.,* 843 F.2d 67 (2nd Cir.1988), despite the similar territorial limitations imposed by the United States Copyright Act. In that case, the defendants illegally reproduced a copyrighted poster in the United States and then published it abroad in Israeli newspapers. *Id.* at 72–73. The magistrate awarded the plaintiff damages for the extraterritorial acts of copyright infringement occurring in Israel, *id.* at 70, and the defendants appealed. The Second Circuit affirmed the magistrate's award, concluding that the copyright holder may recover damages from extraterritorial acts of copyright infringement stemming from a "predicate act" of infringement occurring within the United States. *Id.* at 73. "If the illegal reproduction of the poster occurred in the United States and then was exported to Israel, the magistrate properly could include damages accruing from the Israeli newspapers." *Id.;* see generally 3

Nimmer, *supra* § 14.05 at 14–80. We see no barrier preventing the High Court of Singapore from following a similar course of remedy if it so desires.

■ Second, the territorial limits of the Singapore Copyright Act cannot prevent the High Court of Singapore from granting Creative's request to permanently enjoin Aztech's infringing conduct in Singapore. Indeed, we are unable to conceive of a more effective means of protecting Creative's United States copyright interests than by shutting off the pipeline of infringing goods at the source. Thus, regardless of whether the High Court of Singapore has jurisdiction to adjudicate acts of copyright infringement occurring outside Singapore, we believe that Court is capable of offering Creative an adequate monetary or injunctive remedy under the Singapore Copyright Act. While the scope of relief available in the High Court of Singapore may not be what Creative envisioned when it filed its claim in the United States district court, the *forum non conveniens* doctrine does not require it to be so. As we observed in *Zipfel,* 832 F.2d at 1484, "[s]uch [an] alternative for[um] may not provide all of the remedies and benefits which might be available in an American court, but the remedies provided are not 'so clearly inadequate or unsatisfactory that [there] is no remedy at all.'" *Id.* (quoting *Piper,* 454 U.S. at 254, 102 S.Ct. at 265).

### 2. Availability of United States Copyright law

In addition, we are aware of nothing preventing the High Court of Singapore from applying United States Copyright law to Creative's counterclaim in the event that it determines the scope of remedies offered under the Singapore Copyright Act to be inadequate. The mere inability to adjudicate acts of infringement occurring in the United States under the Singapore Copyright Act should not impede that court from applying United States copyright law to those claims should the need arise. This Court has recognized the potential of American courts to entertain actions under the copyright laws of other nations. *See Subafilms,* 24 F.3d at 1095 n. 10; *see generally* 2 Paul Goldstein,

Copyright: Principles, Law and Practice § 16.3 at 683 (1989). If our courts can entertain actions under the copyright laws of foreign nations, we see no reason why the High Court of Singapore is incapable of doing the same if need be.

 Finally, there is simply no support for Creative's argument that 28 U.S.C. § 1338(a) bars the High Court of Singapore from applying United States copyright law. That statute clearly grants United States district courts jurisdiction over copyright claims "exclusive of the courts of the states," not exclusive of the courts of foreign nations. Creative urges this Court to interpret this provision as a grant of jurisdiction exclusive of foreign courts as well as courts of the fifty states. There is no support for this interpretation, however. Even if this Court were to adopt Creative's strained interpretation of 28 U.S.C. § 1338(a), that statute could not prevent the High Court of Singapore from applying United States copyright law if it wished to do so. As a foreign nation, Singapore is not bound by acts of Congress as the fifty states are under the Supremacy Clause of the United States Constitution. Creative can point to no barrier precluding the High Court of Singapore from applying United States copyright law to Creative's counterclaim should the need arise. *See Contact Lumber,* 918 F.2d at 1451 n. 3 ("The Philippine courts could apply U.S. COGSA if the situation so warrants. Evidence indicates that the Philippine COGSA is substantially similar to U.S. COGSA, which suggests the Philippine courts would be competent to apply U.S. law.").

## C. The Balance of Private and Public Interest Factors

 "Given the existence of an adequate alternative forum, a district court must consider the balance of private and public interest factors to determine whether to dismiss on grounds of forum non conveniens." *Lockman,* 930 F.2d at 769 (citing *Gulf Oil,* 330 U.S. at 508–09, 67 S.Ct. at 843). While there is normally a strong presumption in favor of honoring the plaintiff's choice of forum, a foreign plaintiff's choice is afforded less deference. *Piper* 454 U.S. at 255–56,

102 S.Ct. at 265–66. The district court concluded that, on the whole, both the private and public interest factors pointed to Singapore as the appropriate forum. We agree.

### 1. Private Interest Factors

The private interest factors include: (1) relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses, and cost of obtaining attendance of willing witnesses; (3) possibility of viewing subject premises; (4) all other factors that render trial of the case expeditious and inexpensive.

*Zipfel,* 832 F.2d at 1485 (citing *Gulf Oil,* 330 U.S. at 508, 67 S.Ct. at 843).

 The district court concluded that the balance of the private interest factors favored dismissal. It weighed the first factor in favor of dismissal because all of the records and the majority of witnesses involved in the manufacture of the alleged "Sound Blaster clones" are located in Singapore. The district court also weighed the last factor in favor of dismissal because the parallel action in the High Court of Singapore was further advanced than the United States action. It weighed the second factor against dismissal because the majority of expert witnesses reside in California. The district court viewed the third factor as a neutral because there were no premises to view. We find no abuse of discretion in the district court's consideration of the private interest factors. Both primary parties, the key infringing conduct, and the bulk of the witnesses are located in Singapore, and the case can best be litigated there.

### 2. Public Interest Factors

 The public interest factors include: (1) administrative difficulties flowing from court congestion; (2) imposition of jury duty on the people of a community that has no relation to the litigation; (3) local interest in having localized controversies decided at home; (4) the interest in having a diversity case tried in a forum familiar with the law

that governs the action: (5) the avoidance of unnecessary problems in conflicts of law. *Id.*

The district court determined that the public interest factors also favored dismissal. It weighed the second factor in favor of dismissal because both principal parties are residents of Singapore and the alleged wrongful acts of copyright design infringement occurred there. The district court viewed the first and fourth factors neutrally, reasoning that both the United States and Singapore judiciaries are overburdened and that, regardless of which court eventually adjudicated this case, an application of foreign law at some point was inevitable.

Creative argues that the district court should have weighed the second and third factors against dismissal due to the United States' strong interest in protecting United States' copyright interests, especially where the complaint alleges infringements occurring within the United States. Creative also argues that the fourth factor should have been weighed against dismissal because its claim was based solely on United States copyright law.

Once again, we find no abuse of discretion. This is essentially a dispute between two Singapore corporations as to which of them was the original developer of the disputed sound card technology. This is not a case involving the piracy of American made products or substantively involving American companies. As such, the United States' interest in resolving this controversy and the relation of the jury community to this controversy are extremely attenuated and do not sway the balance against dismissal. The presence of Aztech Labs, a wholly-owned subsidiary of a Singapore corporation, influences our analysis very little.

The dissent charges that our decision unfairly discounts what it views as the United States' strong public interest in resolving this copyright claim. It argues that "an American copyright is a valued benefit granted by the United States government for the primary purpose of benefitting the general public good; therefore, a copyright infringement claim must not be treated as a mere private cause of action like a tort or breach of contract." Post at 708. We disagree. "Federal copyright laws do not serve this purpose of protecting consumers. They are designed to protect the property rights of copyright owners." *Anderson v. Nidorf,* 26 F.3d 100, 102 (9th Cir.1994) (per curiam) (citing *Wheaton v. Peters,* 33 U.S. 591, 603, 8 L.Ed. 1055 (1834)). As such, the key interests in this dispute lie with the Singapore corporations, not the American public.

We also agree with the district court's determination retaining this action would not have avoided the problem of having to apply foreign law. The scope of Creative's complaint necessarily implicates the legality of infringing acts occurring in Singapore. As such, an application of foreign law is likely inevitable, regardless of which forum adjudicates this controversy. *See* 3 Nimmer, *supra* § 17.02 at 17–21. Consequently, we conclude that the district court did not abuse its discretion in determining that the public interest factors favor dismissal.

## III. CONCLUSION

In sum, we hold that 28 U.S.C. § 1338(a) does not render the *forum non conveniens* doctrine inapplicable to the United States Copyright Act. We also conclude that the district court did not abuse its discretion either in determining that the High Court of Singapore is an adequate alternative forum in which to adjudicate Creative's United States copyright infringement claim, or that the balance of private and public factors favors dismissal. Consequently, we AFFIRM the order of the district court.

FERGUSON, Circuit Judge, dissenting:

Because the district court failed to properly exercise its discretion by dismissing for *forum non conveniens* a claim brought pursuant to United States copyright law, I dissent. A district court may dismiss an action on grounds of *forum non conveniens* upon a showing that 1) an adequate alternative forum exists, *and* 2) the balance of relevant public and private interest factors weighs in favor of dismissal. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 257, 102 S.Ct. 252, 266, 70 L.Ed.2d 419 (1981). In this case, the

district court erred by ignoring the unique nature and complexity of American copyright law in its analysis of both parts of the *forum non conveniens* test.

I must admit that I am astounded when I read that it is not convenient to try an American copyright case in an American court for copyright infringement that takes place solely in America. I am also astounded by a decision that the convenient place to hold the trial is in Singapore, particularly when the majority have not the slightest idea that a court in that nation would even recognize an American copyright.

## Background

Plaintiff, Creative Technology Ltd., and Defendant, Aztech Systems Pts. Ltd., are both Singapore companies. Defendant, Aztech Labs, Inc. is a wholly owned United States-based subsidiary of Defendant Aztech Systems. Both Creative and Aztech Systems designed and manufactured the computer software at issue in Singapore. Both companies have wholly owned subsidiaries in the United States that distribute their software in the United States. Creative owns twelve United States copyrights for the "text of computer software" which it seeks to protect in this action. All twelve of Creative's copyrighted works were first published in the United States. Creative's entire complaint is based on the defendants' infringement in the United States only of Creative's twelve United States copyrights through their design, manufacture, importation, and distribution in the United States of similar software. Each of these acts constitutes a separate and independent violation of the United States Copyright Act. *See* 17 U.S.C. §§ 106, 107–120, and 501. Moreover, the remedies that Creative seeks, namely a permanent injunction against further production of the infringing computer software, an order recalling all infringing copies, and profits obtained from sales of the infringing products, are those provided by the United States Copyright Act. *See* 17 U.S.C. §§ 502–504.

Creative's complaint alleges that Creative was damaged by the distribution of the defendants' infringing software in the United States in violation of 17 U.S.C. §§ 501 and 106, respectively. In its opposition to the defendants' motion to dismiss this action on grounds of *forum non conveniens,* Creative has submitted evidence that Aztech Labs was distributing $500,000 worth of allegedly infringing software per month in the United States. According to the complaint, all of Aztech Labs' allegedly infringing conduct occurred in the United States. Even though the district court justified its dismissal for *forum non conveniens* by the fact that the design and manufacture of both Creative's and Aztech Systems' software occurred in Singapore, the district court acknowledged that "Creative's complaint focuses on Aztech's distribution of Sound Galaxy cards in the United States."

## Discussion

### I.

In determining that it is not convenient to try this case in its court, the district court and the majority have failed to take into account one of the abiding principles of American copyright law, particularly as it has developed pursuant to the Berne Convention: the principle of "national treatment." According to this principle, authors should enjoy in other countries the same protection for their works as those countries accord their own authors. *See* UCC Art. II; Berne Conv. Art. V. *See generally* 3 Nimmer on Copyright § 17.01[B], at 17–8; H.Rep. (BCIA) at 14. Foreign authors who are granted American copyrights must be treated the same as American authors. Moreover, "it is commonly acknowledged that the national treatment principle implicates a rule of territoriality." *Subafilms, Ltd. v. MGM–Pathe Communications Co.,* 94 C.D.O.S. 3381, 3385 (9th Cir.1994). *See also* 3 Nimmer, *supra,* § 17.05, at 17–39 ("The applicable law is the copyright law of the state in which the infringement occurred, not that of the state of which the author is a national ..."). For purposes of a *forum non conveniens* analysis, the principle of national treatment sets copyright cases apart from other kinds of cases. The national treatment principle requires that, where a copyright has been infringed in a particular country,

706

the author has the right to pursue a remedy in that country.

The majority have failed to consider the adequacy of Singapore as an alternative forum in light of the principle of national treatment. They do not address the impact of the Berne Convention, which requires United States courts to treat foreign owners of American copyrights the same as American owners. Instead, the majority use the doctrine of *forum non conveniens* to hold that when foreign persons own American copyrights, it is not convenient for an American court to adjudicate their claims. Contrary to the majority's assertion, I simply advocate that we follow the Berne Convention by allowing foreign copyright owners the same opportunity that we give to American copyright owners to litigate their case in the United States when the alleged infringement takes place in the United States.

In this case, Creative alleges independent violations of the United States Copyright Act by acts of distribution which occurred in the United States. Our decision in this case should be obvious when put in the context of this court's analysis in cases such as *Timberlane Lumber Co. v. Bank of America,* 749 F.2d 1378 (9th Cir.1984) and *Subafilms.* In *Timberlane,* 749 F.2d at 1386, this court affirmed a dismissal on grounds of *forum non conveniens,* because the "witnesses, the parties, and dastardly deeds were all Honduran; these suits would clearly require us to apply Honduran law ..." Similarly, in *Subafilms,* 94 C.D.O.S. at 3385, this court attempted to prevent "international discord" by holding that a claim of infringement based only on the authorization in the United States of infringing acts which occurred entirely outside the United States was not cognizable under the United States Copyright Act. In *Timberlane* and *Subafilms,* the territorial nature of copyright law precluded application of the United States Copyright Act to conduct that did not occur *at all* in the United States. By contrast, in this case, the principle of national treatment requires that United States copyright law be applied in order to remedy infringing conduct that occurred in the United States. Those works of Creative that are protected by United States

copyrights and that were infringed by conduct which occurred in the United States must receive the benefit and the protection of the national treatment principle. Creative is entitled to protection under the United States Copyright Act.

Thus, the first part of the *forum non conveniens* test requires us to retain this action because the principle of national treatment precludes Singapore from being an adequate alternative forum. *See Piper Aircraft,* 454 U.S. at 257, 102 S.Ct. at 266. The national treatment principle requires that infringement occurring in the United States be adjudicated in the United States.

However, the majority conclude that the "High Court of Singapore is capable of granting Creative the relief it seeks." They conclude that the High Court can provide both a permanent injunction and sufficient damages to remedy the independent violations of importation and distribution under the United States Copyright Act. The majority have reached these conclusions without resort to any High Court case or other Singapore authority. Nor do the majority have any basis on which to conclude that the Singapore High Court will even "desire" to follow this course of remedy. Indeed, the only thing we really know about Singapore copyright law is that it is not even bound by the principles of the Berne Convention, because Singapore was not a signatory to that treaty. The record before us contains not a single Singapore statute or opinion authorizing the type of legal approach that the majority assumes the High Court will follow. In fact, the record does not tell us anything about Singapore law, its procedures, composition, or rules.

Thus, Singapore law is inadequate and inapplicable for the purposes of protecting Creative's United States copyrights. In this case, the "subject matter" of the dispute consists of twelve United States copyrights which are entitled to protection by American courts against infringement occurring in the United States. This is precisely the type of case in which "dismissal [is] not ... appropriate where the alternative forum does not permit litigation of the subject matter of the

dispute." *Piper Aircraft,* 454 U.S. at 254, n. 22, 102 S.Ct. at 265, n. 22.

## II.

In addition to determining whether an adequate alternative forum exists, a district court must judge the applicability of *forum non conveniens* by weighing the relevant public and private interest factors. *Piper Aircraft,* 454 U.S. at 257, 102 S.Ct. at 266. In *Gates Learjet Corp. v. Jensen,* 743 F.2d 1325, 1334 (9th Cir.1984), this court stated:

> If a district court properly analyzes and considers all relevant factors and its balancing of these factors is reasonable, its forum non conveniens dismissal "may be reversed only when there has been a clear abuse of discretion." A district court, therefore, abuses its discretion when it fails to balance the relevant factors.

(Citations omitted.)

It is clear enough from the complaint, which is based entirely upon American copyright law, that the district court abused its discretion by dismissing this action. The district court utterly ignored the public interest in having the federal courts of this country apply American copyright law to resolve this controversy. *See Contact Lumber Co. v. P.T. Moges Shipping Co. Ltd.,* 918 F.2d 1446, 1452 (9th Cir.1990). In *Gates Learjet,* 743 F.2d at 1336, this court held that the district court abused its discretion by failing to properly weigh the same public interest factors in the analogous area of trademark litigation:

> ... the district court failed to weigh Arizona's interest in having the controversy "resolved at home." Arizona has a significant interest in interpreting its own laws.... Arizona also has an interest in protecting its companies from trademark infringement abroad to preserve the state's economic vitality. Although the situs of the alleged trademark and tradename infringement was the Philippines, it appears that Philippine law is not applicable.... A proper understanding of the applicable law and the relative interest, in fact, suggests that Arizona has the more substantial interest in this litigation.

(Citations omitted.) Here, the applicable law is the United States Copyright Act *and* the situs of the alleged infringement is the United States. The district court erred in finding that any copyright law other than the United States Copyright Act would need to be applied in this case. Thus there is a strong public interest in avoiding conflict of law problems by having American courts resolve this controversy. *See Zipfel v. Halliburton Co.,* 832 F.2d 1477, 1485 (9th Cir.1987); *Subafilms,* 94 C.D.O.S. at 3385. In addition, as in *Gates Learjet,* there is a strong public interest in having American courts resolve this localized controversy. The district court abused its discretion by failing to consider these factors.

Moreover, the district court's error was compounded by its failure to account both for the unique significance of copyright law in American society and federal court jurisprudence and for the enormous complexity of American copyright law, particularly as it pertains to the protection of computer software. As the Supreme Court has stated:

> The immediate effect of our copyright law is to secure a fair return for an "author's" creative labor. But the ultimate aim is, by this incentive, to stimulate artistic creativity for the general public good. "The sole interest of the United States and the primary object in conferring the [copyright] monopoly," this Court has said, "lie in the general benefits derived by the public from the labors of authors...." When technological change has rendered its literal terms ambiguous, the Copyright Act must be construed in light of this basic purpose.

*Twentieth Century Music Corp. v. Aiken,* 422 U.S. 151, 156, 95 S.Ct. 2040, 2044, 45 L.Ed.2d 84 (1975) (citations omitted). Stated simply, the United States courts are the most well-suited forum for adjudicating the rights bestowed by United States copyrights. 133 Cong.Rec. H1293–05 (daily ed. March 16, 1987) ("While a relatively obscure discipline, copyright touches every American in their homes, schools, libraries, and workplaces. Determining the scope of a law which deeply affects how all of us may enjoy books, films, television programming, computer software, information products and services, music,

and the visual arts requires great caution, particularly in a rapidly changing society such as ours that seeks both the free flow of information and the free marketplace"); Peter L. Felcher, *Subject Matter of Copyright and Jurisdiction,* 249 Practising Law Institute/Patent 7, *11 (1988) ("Federal judicial as well as Congressional control over copyrights is essential to promoting our system of intellectual and creative freedom and protection").

By dismissing this action on grounds of *forum non conveniens,* the district court also failed to understand the importance of the copyrightability of computer software in American jurisprudence. American copyright law has yet to resolve fully the extent of protection that is due computer software, firmware, and other computer products. *See, e.g.,* 2 International Copyright Law and Practice, USA, § 2, at 37 (Paul E. Geller & Melville B. Nimmer eds., 1993) ("Computer software stands at the vortex of a hotly contested storm in United States copyright law at present"). We must not leave the resolution of this issue to a Singapore court. The enormous importance of both computers and computer-related copyrights to American society precludes such a simplistic and short-sighted solution.

A copyright may not be as important as the Congressional Medal of Honor, but the district court and the majority have completely disregarded the fact that an American copyright is a valued benefit granted by the United States government for the primary purpose of benefiting the general public good; therefore, a copyright infringement claim must not be treated as a mere private cause of action like a tort or breach of contract. The majority confuse the importance of copyright law to the public good with the importance of copyright law to the American consumer. Nowhere have I stated that the district court should have accounted for the importance of this case to American consumers. Rather, I maintain that the district court failed to consider the enormous impact on the general public good resulting from its decision to leave to a Singapore court unsettled issues relating to the intellectual freedom to create American copyrights to computer software in a rapidly expanding market.

The district court and the majority cite *Lockman Foundation v. Evangelical Alliance Mission,* 930 F.2d 764 (9th Cir.1991), for authority to dismiss this case. They fail to understand the difference between this case and *Lockman.* In *Lockman,* the plaintiff owned an American copyright of its English translation of the Bible. The alleged infringement was the translation in Asia of the Bible into several Asian languages for distribution almost exclusively in Asia. In addition, the plaintiff alleged a violation of Japanese copyright law plus several non-copyright counts. The district court dismissed all the counts on the ground that it was not convenient to try them in America. The plaintiff did not appeal the dismissal of the American copyright claim. This Court held that, because the American copyright claim was so intertwined with the non-copyright claims, a grant of leave to amend in order to eliminate the copyright claim would have been futile. That is not this case. It is readily apparent that the American public interest is non-existent for Asian language Bibles distributed in Asia. There was no finding that even one Asian Bible was distributed in the United States. No infringement took place in the United States. In *Lockman,* there simply was not, as the Supreme Court found in *Aiken,* the stimulation of artistic creativity for the general public good in America.

Finally, contrary to the majority's view, given the enormous importance to American society of copyright protection of computer products that are imported and distributed in this country, the interest of the United States in resolving this matter and the relation of the jury community to this task strongly favor retaining this case in the United States courts. There is no evidence presented in this case to demonstrate that Singapore courts are qualified to balance the creativity protected by American copyright law. A United States copyright is a privilege bestowed by our government upon the author in order to reward creativity. American copyright law involves a significant public interest.

Because there is no basis in claiming that it is not convenient to try this case in a United States District Court and because the public and private interest factors weigh in favor of retaining this action, I dissent. The district court erred in dismissing this action on grounds of *forum non conveniens*.