**David Y.F. LUNG and Ruth C. Lung, Plaintiffs,**

v.

**YACHTS INTERNATIONAL, LTD et al., Defendants.**

**No. 96–00186 ACK.**

United States District Court, D. Hawaii.

July 3, 1997.

---

Richard Paul McClellan, III, Honolulu, HI, Edward J.S.F. Smith, Honolulu, HI, Matthew S.K. Pyun, Jr., for Plaintiffs.

Diane D. Hasert, Damon Key Bocken Leong Kupchak, Honolulu, HI, Anne S. Mason, Mason & Associates, P.A., Clearwater, FL, for Defendants.

### ORDER GRANTING DEFENDANTS' MOTION TO TRANSFER THE CASE

KAY, Chief Judge.

#### FACTUAL BACKGROUND

This case arises out of David and Ruth Lung's ("Plaintiffs") purchase of a Moorings

Lagoon 4200, a pleasure yacht ("yacht"), on December 28, 1994 for $375,000. Plaintiffs claim that the yacht has significant and material deviations from the 1991 Boat of the Year Moorings Lagoon 4200 they believed they were purchasing.

As a result of the yacht's alleged shortcomings, the Plaintiffs in their latest complaint [1] have sued: (1) Mariner International Travel, Inc., a Delaware Corporation, (2) The Moorings, Ltd., a British Virgin Islands Corporation, (3) Moorings U.S. Yacht Services, Inc., a corporation of unknown origin, (4) Moorings International, Inc., another corporation of unknown origin, (5) Jean F. Larroux, Jr., a citizen of the State of Delaware who is responsible for the purchase and sale of yachts for Yachts International, Ltd., (6) Katy Buckner, a sales representative for Mariner International Travel, Inc., (7) Mariner International Travel, Inc., (8) Yachts International, Ltd. and (9) various Doe Defendants (collectively referred to as "Defendants"). In their complaint, Plaintiffs allege seven different causes of action: (1) fraud, (2) failure of condition precedent, (3) breach of contract, (4) tortious breach of contract, (5) intentional misrepresentation, (6) negligent misrepresentation, and (7) unfair and deceptive business practices.

On August 22, 1996, Defendants filed a motion to dismiss the complaint based on the Court's lack of personal jurisdiction, or in the alternative, a motion to transfer venue. On December 4, 1996, Plaintiffs filed their opposition to which the Defendants replied on June 12, 1997.

On June 23, 1997, the Court held a hearing on the matter.

### STANDARD OF REVIEW

■ Whether a party is subject to personal jurisdiction in a federal court action based on diversity is determined by reference to the laws of the state in which the federal court sits. *Thos. P. Gonzalez Corp.*, 614 F.2d at 1250. Where a defendant challenges personal jurisdiction in a motion to dismiss, the plaintiff "must make only a prima facie showing of jurisdictional facts

through the submitted materials in order to avoid defendant's motion to dismiss." *Data Disc, Inc. v. Systems Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir.1977). The plaintiff, however, must eventually establish jurisdiction by a preponderance of the evidence either at a pretrial evidentiary hearing or at trial. *Id.* In scrutinizing a motion to dismiss based upon lack of personal jurisdiction, the court looks to the uncontroverted allegations of the complaint, affidavits and depositions. *Pure, Ltd. v. Shasta Beverages, Inc.*, 691 F.Supp. 1274, 1277 (D.Haw.1988).

### DISCUSSION

I. *Personal Jurisdiction*

■ For this Court to exercise personal jurisdiction over the Defendants, Defendants must have sufficient contacts with the state as to fulfill Hawaii's long-arm statute and the Due Process Clause. *See generally Sher v. Johnson*, 911 F.2d 1357, 1360 (9th Cir.1990).

■ Hawaii's long-arm statute, Haw.Rev. Stat. § 634–35, has been interpreted to allow jurisdiction over non-resident defendants "to the extent permissible by the Due Process Clause of the Fourteenth Amendment." *Cowan v. First Insurance Company*, 61 Haw. 644, 649, 608 P.2d 394 (1980). The ability of the Court to exercise personal jurisdiction over the Defendants, therefore, depends solely on the Constitution.

■ The Due Process Clause requires that the Defendants have "certain minimum contacts with [Hawaii] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). In applying these abstract principles, courts have created two different tests for determining jurisdiction. The first is general jurisdiction which allows a person to be sued in a state even if the cause of action is wholly unrelated to the defendant's connection to the state. Due to its broad nature, general jurisdiction can only be established when a "defendant's activities in the state are 'substantial' or 'continuous and systematic.'" *Sher*, 911 F.2d at 1360. Plaintiffs do not

---

1. Plaintiffs filed an amended complaint on December 2, 1996.

claim that any Defendants fulfill the rigorous strictures required for the exercise of general jurisdiction.

The second method for exercising jurisdiction—specific jurisdiction—is less demanding requiring only "minimum contacts" with the forum state. *Burger King v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985). In an effort to clarify the "minimum contacts" standard, the Ninth Circuit has created a three-part test:

(A) some action must be taken whereby defendant purposefully avails himself or herself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of the forum's laws;

(B) the claim must arise out of or result from defendant's forum related activities; and

(C) [the] exercise of jurisdiction must be reasonable

*Sher,* 911 F.2d at 1361. Using these factors, the Court will examine whether it has specific jurisdiction over Defendants, taking as true Plaintiffs' allegations. *Id.*

### 1. *Purposeful availment*

In determining whether there has been "purposeful availment," the Ninth Circuit "distinguish[es] contract from tort actions." *Roth v. Garcia Marquez,* 942 F.2d 617, 621 (9th Cir.1991); *see also Alvarez v. Aircraft Modular Products, Inc.,* 949 F.Supp. 1470, 1475 (D.Hawai'i.1996). In tort cases, "[t]he three elements of purposeful availment ... are: (1) intentional action; (2) aimed at the forum state; and (3) causing harm that the defendant should have anticipated would be suffered in the forum state."

*Ziegler v. Indian River County,* 64 F.3d 470 (9th Cir.1995). "In the contract context, however, *Burger King* specifically noted that the existence of a contract with a resident of the forum state is insufficient by itself to create personal jurisdiction over the nonresident." *Roth v. Garcia Marquez,* 942 F.2d 617, 621 (9th Cir.1991). Instead, only "parties who 'reach beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanction in the other State for the consequences of their activities." *Id.* This case contains causes of action sounding in both tort and contract. Thus, the Court will analyze the facts of the case under both standards.[2]

### A. *Tort*

Plaintiffs claim that the Defendants committed fraud and intentional misrepresentation in selling the yacht. Defendants deny it. The Ninth Circuit has held that "conflicts between the facts contained in the parties' affidavits must be resolved in [Plaintiffs'] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists." *AT & T v. Compagnie Bruxelles Lambert,* 94 F.3d 586, 588 (9th Cir. 1996). Resolving the factual disputes in favor of the Plaintiffs, the Court finds that Plaintiffs have established a prima facie case that Defendants committed an intentional act.

A closer question is whether the alleged fraud was aimed at the forum state. According to the Plaintiffs, however, Defendants sent numerous solicitations to Plaintiffs' Hawaii address concerning "details of [the] equipment, use, [and] charter management contracts" that constitute the fraud alleged.

**2.** Under personal jurisdiction analysis, each defendant has to fulfill the minimum contacts requirement. *Brainerd v. University of Alberta,* 873 F.2d 1257, 1258 (9th Cir.1989). Plaintiffs, however, allege that all Defendants participated equally in the sale of the boat. Thus, for purposes of this motion to dismiss, the Court will treat all the Defendants equally. Ultimately, however, the Plaintiffs need to prove, by a preponderance of the evidence, the existence of personal jurisdiction for each defendant.

In treating the Defendants equally, the Court rejects Defendants argument that the defendants

sued individually—Jean F. Larroux, Jr. and Katy Buckner—should be treated differently because their only contacts with Hawaii were made in their corporate capacity. Although Ninth Circuit precedent exists supporting Defendants' argument, *Forsythe v. Overmyer,* 576 F.2d 779, 783–84 (9th Cir.1978), the Supreme Court has since held that defendants can be sued individually for actions taken in their corporate capacities. *Calder v. Jones,* 465 U.S. 783, 789–90, 104 S.Ct. 1482, 1486–87, 79 L.Ed.2d 804 (1984); *see e.g. Hudson v. Moore Business Forms, Inc.,* 609 F.Supp. 467, 477 (N.D.Cal.1985).

*See* Plaintiffs' Opposition, Affidavit of Lung, ¶ 15. Plaintiffs also allege that Defendants made "countless telephone calls" in December, 1994 to Hawaii concerning the "specifications of the Moorings' Lagoon 4200 yacht." *Id.* at ¶ 16. These two allegations together fulfill Plaintiffs' prima facie burden that Defendants' tort was aimed at the forum state.

Similarly, these allegations also fulfill the third element: that the Defendants should have anticipated that their alleged fraud would cause harm in the forum state. Plaintiffs are citizens of Hawaii. Perpetuating fraud against them will foreseeably cause them harm. Any harm they suffer will be suffered in Hawaii, as well as at the site of the vessel. Accordingly, the Court finds that Plaintiffs have established, under the Ninth Circuit test for torts, a prima facie case of purposeful availment.

### B. *Contract* [3]

 As stated above, the test for purposeful availment in contract actions is more demanding requiring "continuing relationships and obligations with citizens of another state." *Roth v. Garcia Marquez,* 942 F.2d 617, 621 (9th Cir.1991). Nevertheless, construing the facts most favorably to the Plaintiff, Defendants have purposefully availed themselves of Hawaii.

Plaintiffs purchased a monohull yacht from Defendants in 1988. Since then, Defendants have "regularly" sent promotional materials to Plaintiffs' home address in Hawaii. *See* Plaintiffs' Opposition, Lung Affidavit, ¶ 12. In 1994, Defendants sent a solicitation concerning the yacht at issue here. *Id.* at ¶ 14. Plaintiffs expressed an interest in the yacht. Thereafter, Defendants sent "several bulk mailings" to the Hawaii address and made countless telephone calls concerning the sale of the yacht. During this active solicitation, Plaintiffs allegedly informed Defendants that if the yacht was purchased, its "homeport" would be Kaneohe, Hawaii.

The yacht was transferred on December 28, 1994. The purchase agreement refers to Plaintiffs as Hawaii residents. On the same day, the parties also entered into a "Yacht Management Agreement" that created detailed commitments between the two parties for four years.

 In light of these facts, the Court finds that Defendants purposefully availed themselves of Hawaii. At the outset, Defendants ongoing and significant solicitation of the Plaintiffs constitutes purposeful availment. For purposes of jurisdiction, solicitation of business is "affirmative conduct which allows or promotes the transaction of business within the forum state." *Sinatra v. National Enquirer, Inc.,* 854 F.2d 1191, 1195 (9th Cir.1988). In accordance with this, the Ninth Circuit has held that "the solicitation of business in the forum state that results in business being transacted or contract negotiations will probably be considered purposeful availment." *Id.* That is precisely what occurred in this case. Defendant solicited business that "result[ed] in business being transacted."

Moreover, Defendants created a "continuing relationship[ ] and obligation[ ] with citizens of another state" when they entered into the "Yacht Management Agreement" ("Management Agreement") with the Plaintiffs. *Burger King Corporation v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 2181–82, 85 L.Ed.2d 528 (1985). Under that agreement, an elaborate division of the yachts' use was created including, *inter alia,* when and where the Plaintiffs could use the yacht and what type of insurance should be purchased. The agreement, moreover, was to last four years. Clearly, this agreement created a "continuing relationship[ ] and obligation[ ]" between Defendants and Plaintiffs, citizens of Hawaii. Accordingly, under the Supreme Court's holding in *Burger King,* the Court finds that Defendants purposefully availed themselves of Hawaii by entering into contracts with the Plaintiffs.

### 2. *Plaintiffs' claims arise out of or result from Defendants' forum related activities*

The Ninth Circuit has simplified the second element as to require only that "but-for"

---

**3.** Plaintiffs have the burden of establishing personal jurisdiction as to each claim brought. *See*

*e.g. Data Disc, Inc. v. Systems Technology Associates, Inc.,* 557 F.2d 1280 (9th Cir.1977).

the defendant's forum related activities, the claim at issue would not have arisen. *Ballard*, 65 F.3d at 1500. As applied in this case, therefore, the issue is whether "but-for" Defendants' connections with Hawaii would Plaintiffs' claims have arisen.

█ As stated above, Defendants forum-related activities consisted of soliciting Plaintiffs concerning the purchase of the yacht and of entering long-term management agreements with the Plaintiffs. The basis of the lawsuit is that the Defendants breached the contract for sale of the yacht and perpetrated fraud when they sold a yacht materially different than what was represented. The contract would never have been entered, nor would the yacht have been sold, "but-for" Defendants' solicitation of Plaintiffs. Clearly, these facts establish a *prima facie* case that but-for Defendants' activities in Hawaii, Plaintiffs' claims would never have arisen. Accordingly, the Court finds that the Plaintiffs have fulfilled the second element.

3. *The exercise of jurisdiction must be reasonable*

█ The final element for specific jurisdiction is that the exercise of jurisdiction must be reasonable. *Sher*, 911 F.2d at 1361. The reasonableness of jurisdiction is **presumed,** however, where the defendant has "purposefully directed its activities" to the forum state. *Id.* at 1364. The burden, therefore, rests with Defendants to "present a **compelling** case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* (emphasis added). To determine whether a compelling case exists, courts look at: "(1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the

plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Core–Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482 (9th Cir.1993) "None of the factors is dispositive in itself; instead, we must balance all seven." *Id.* Applying these factors, Defendants have presented a strong argument, if not a compelling argument, that exercising jurisdiction would be unreasonable. However, even if the Court were to find that the exercise of jurisdiction were reasonable, it finds that this case should be transferred to the Middle District of Florida.[4]

## II. *Transfer of Venue*

█ 28 U.S.C. § 1404(a) provides:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The purpose of this section is to "prevent the waste 'of time, energy, and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S.Ct. 805, 809, 11 L.Ed.2d 945 (1964) (quoting *Continental Grain Co. v. The FBL–585*, 364 U.S. 19, 26–27, 80 S.Ct. 1470, 1474–75, 4 L.Ed.2d 1540 (1960)).

Transfer is limited however "to those federal districts in which the action 'might have been brought.'" *Van Dusen*, 376 U.S. at 616, 84 S.Ct. at 809; *see also Tomar Electronics, Inc. v. Whelen Technologies, Inc.*, 819 F.Supp. 871, 877 (D.Ariz.1992) (§ 1404(a) presupposes that proper venue exists in both transferor and transferee forums); *A.J. Indus., Inc. v. United States Dist. Court for Central Dist. of California*, 503 F.2d 384, 387 (9th Cir.1974) ("[T]he ability to raise the subject matter of a suit in the transferor district by counterclaim in the transferee district will, as a general proposition, satisfy the 'where it might have been brought' requirement of 28 U.S.C. § 1404(a).").[5]

---

4. Ultimately determining whether the Court has jurisdiction is unnecessary because under the Supreme Court's decision in *Goldlawr v. Heiman*, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39

(1962), a Court can transfer venue even if it does not have personal jurisdiction over a defendant.

5. Plaintiffs do not claim that the Middle District of Florida would be an improper venue. Never-

Section 1404(a) essentially is a codification of the common law doctrine of *forum non conveniens* that allows transfer, rather than requiring dismissal, where the alternative forum is another federal district. *See A.J. Indus.*, 503 F.2d at 386; *Yerostathis v. A. Luisi, Ltd.*, 380 F.2d 377, 379 (9th Cir. 1967) (enactment of § 1404(a) did not eliminate doctrine of *fnc* ); *Norwood v. Kirkpatrick*, 349 U.S. 29, 31, 75 S.Ct. 544, 546, 99 L.Ed. 789 (1955) (§ 1404(a) "revis[ed] as well as codif[ied]" doctrine of *fnc* ).

Moreover, while the relevant factors to consider are the same, the district court's discretion to transfer under § 1404(a) is broader than its discretion to dismiss for *forum non conveniens. See Norwood*, 349 U.S. at 32, 75 S.Ct. at 546–47 ("Congress ... intended to permit courts to grant transfers upon a lesser showing of inconvenience. This is not to say that the relevant factors have changed or that the plaintiff's choice of forum is not to be considered, but only that the discretion to be exercised is broader."); *see, e.g., Creative Technology, Ltd. v. Aztech Sys. Pte, Ltd.*, 61 F.3d 696, 699 (9th Cir.1995) ("The *forum non conveniens* determination is committed to the sound discretion of the trial court. It may be reversed only when there has been a clear abuse of discretion; where the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference.") (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257, 102 S.Ct. 252, 266, 70 L.Ed.2d 419 (1981)); *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 842 (9th Cir.1986) (ruling on § 1404(a) motion reviewed for abuse of discretion).

In determining whether to transfer under § 1404(a), the court should consider the following statutory factors: (1) convenience of the parties, (2) convenience of the witnesses, and (3) the interests of justice. In addition, the Court should consider private and public interest factors derived from the doctrine of *forum non conveniens. See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir.1986) (*forum*

*non conveniens* considerations helpful in deciding § 1404(a) transfer motion).

The private interest factors include: (1) relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses, and cost of obtaining attendance of willing witnesses; (3) possibility of viewing subject premises; (4) all other factors that render trial of the case expeditious and inexpensive.

*Creative Technology, Ltd. v. Aztech Sys. Pte, Ltd.*, 61 F.3d 696, 703 (9th Cir.1995) (quoting *Zipfel v. Halliburton Co.*, 832 F.2d 1477, 1487 (9th Cir.1987)); *see also Decker Coal*, 805 F.2d at 843.

The public interest factors include: (1) administrative difficulties flowing from court congestion; (2) imposition of jury duty on the people of a community that has no relation to the litigation; (3) local interest in having localized controversies decided at home; (4) the interest in having a diversity case tried in a forum familiar with the law that governs the action; (5) the avoidance of unnecessary problems in conflicts of law.

*Creative Technology*, 61 F.3d at 703–04 (citing *Zipfel*, 832 F.2d at 1485); *see also Decker Coal*, 805 F.2d at 843.

Ultimately, the court "must balance the preference accorded plaintiff's choice of forum with the burden of litigating in an inconvenient forum." *Decker Coal*, 805 F.2d at 843.

### 1. Convenience of Parties

Although "there is normally a strong presumption in favor of honoring the plaintiff's choice of forum," the convenience factor favors the Defendants because the Court finds that the focal point of the case was the Caribbean, not Hawaii. *Creative Technology, Ltd.*, 61 F.3d 696, 703 (9th Cir.1995). In this case, the Plaintiffs and the Defendants reside nearly six thousand miles apart. Thus, unless the case is transferred to somewhere in New Mexico, either the Plaintiffs or the Defendants will be greatly inconvenienced. Between these two parties, howev-

---

theless, the Court notes that venue appears proper in that both individual defendants are resi-

dents of Florida. *See* Larroux Declaration at ¶ 4, 6 and Buckner Declaration at ¶ 4.

er, equity appears to be on the Defendants side.

Plaintiffs purchased a yacht from corporations headquartered in, and individuals that reside in, Florida. The yacht, moreover, was to be used in the Caribbean. There appears to have been no short-term plans to bring the yacht back to Hawaii. In fact, Plaintiffs simultaneously purchased the yacht and entered into an agreement whereby the yacht would remain in the Caribbean.

In addition, Defendants did not even initiate the transaction. Rather, on February 2, 1994, Plaintiffs contacted the Defendants concerning the purchase of the yacht. Plaintiffs, therefore, unilaterally decided to explore the possibility of purchasing property in the Caribbean. To now claim intolerable inconvenience to have to go to the Caribbean area (i.e., Florida) seems disingenuous.

Lastly, in signing the management agreement, the Plaintiffs agreed that the agreement would be:

> construed and the legal relations between the parties hereto determined in accordance with the laws of the State of Florida, U.S.A.. Venue for any legal actions arising out of, or relating to, this Agreement shall lie in Pinellas County, Florida.

Although Plaintiffs claim that agreement is not at issue here, the agreement was entered into simultaneously with the purchase of the yacht. It is relevant, therefore, because it evidences Plaintiffs' understanding and acquiescence that its interaction with the Defendants would be based in Florida. Accordingly, although Plaintiffs will suffer inconvenience [6], the Court finds the focal point of this case was Florida and thus the case should be heard there.

### 2. The Convenience of the Witnesses

The next factor—the convenience of the witnesses—favors the Defendants. In their initial disclosures, Plaintiffs list 13 "individuals with personal knowledge" of the case. Of these 13 individuals, only two—the Plaintiffs—reside in Hawaii. The remaining witnesses, on the other hand, all reside on the Eastern Seaboard, nearly six thousand miles away. For these witnesses, Florida certainly represents a more convenient forum. Accordingly, the Court finds that Florida is a more convenient forum for the witnesses.

### 3. The Interests of Justice

In determining how the interests of justice would be best served, the Court will examine the private and public interests set out in the *forum non conveniens* cases.

#### A. Private Interests

##### 1. Relative ease of access to sources of proof

The witnesses and the yacht aside, the parties' relative ease of access to sources of proof is neutral. The documentary proof in this case will most likely be maintained by both parties. Both the Defendants and the Plaintiffs should have copies of whatever correspondence occurred between the parties.

##### 2. Costs of obtaining witnesses

The costs of obtaining witnesses strongly favors the Defendants because, by Plaintiff's admission, all witnesses other than the Plaintiffs live on the east coast.

##### 3. The Possibility of Viewing the subject premises

The yachts is presently in the British Virgin Islands. If viewing the yacht should become necessary, a Florida venue is far superior to a Hawaii venue.

##### 4. All other factors that render trial of the case expeditious

This factor is neutral.

#### B. Public Interest

##### 1. Administrative difficulties flowing from court congestion

No party has provided any data on this matter making this factor neutral in the analysis of whether to transfer this action.

---

**6.** The Plaintiffs' inconvenience will be less than it would be for most Hawaii residents because: (1) Mr. Lung's status as an ex-pilot entitles Plaintiffs to reduction in airline fares or free airplane travel; and (2) Plaintiffs have relatives living in Palm Beach and have stayed with them in the past.

##### 2. *Imposition of jury duty on the people of a community that has no relation to the litigation*

As states with long-standing boating interests, both the Floridian and Hawaiian communities have an interest in preventing breach of contracts and fraudulent transfers of boats. Plaintiffs may have an edge on this factor because the community of Hawaii does have an interest in ensuring that its citizens are not bilked. The case's Caribbean focal point, however, diminishes this interest. After all, Hawaii has little interest in protecting its citizens: (1) who initiate the purchase of a boat for use exclusively outside of Hawaii; and (2) agree that Florida law and venue will govern. Accordingly, even if this case has a greater connection to a Hawaiian jury, it is *de minimis.*

##### 3. *The local interest in having localized controversies decided at home*

For the reasons given above, this case does not involve a localized controversy. Accordingly, this factor is neutral.

##### 4. *Choice of law considerations*

If this case is transferred, the Florida court will have to apply the law this court would have applied. *See Van Dusen v. Barrack,* 376 U.S. 612, 639, 84 S.Ct. 805, 820–21, 11 L.Ed.2d 945 (1964). What law this Court would apply, however, is far from certain. Under Hawaii law, choice of law depends on the "assessment of the interests and policy factors" involved in a particular case. *Peters v. Peters,* 63 Haw. 653, 664, 634 P.2d 586 (1981). Considering the focal point of this case, therefore, it is quite likely that Hawaii law would not be applied. Thus, choice of law considerations do not really militate in favor of either party.

On the whole, after weighing the private and public interest factors, the Court finds that the interests of justice favor the Defendants. The balance of these interests coupled with the greater convenience for the parties and witnesses of trying this case in Florida convinces the Court that transfer under 28 U.S.C. § 1404 is warranted. Accordingly, the Court GRANTS Defendants' motion to transfer the case.

#### CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to transfer the case.

IT IS SO ORDERED.