Seymour SHER; Jessica Faith Sher, Plaintiffs–Appellants,

v.

Paul B. JOHNSON, dba Johnson, Paniello & Hayes; Joseph M. Paniello, dba Johnson, Paniello & Hayes; J. Michael Hayes, dba Johnson, Paniello & Hayes; Robert E. Johnson, dba Johnson, Paniello & Hayes; Johnson, Paniello & Hayes, Defendants–Appellees.

No. 88–6370.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 2, 1990.

Decided Aug. 17, 1990.

costs of action to *either* party." (emphasis added).

William J. Genego, University of Southern California Law Center, Los Angeles, Cal., and Vicki I. Podberesky, Nasatir & Hirsch, Santa Monica, Cal., for plaintiffs-appellants.

Thomas N. Charchut, Haight, Brown & Bonesteel, Santa Monica, Cal., for defendants-appellees Paul B. Johnson, J. Michael Hayes and Johnson, Paniello & Hayes.

John R. Bush and Douglas S. Gregory, Bush, Ross, Gardner, Warren & Rudy, Tampa, Fla., for defendant-appellee Joseph M. Paniello.

Before NELSON, BRUNETTI and KOZINSKI, Circuit Judges.

KOZINSKI, Circuit Judge:

The issue here is personal jurisdiction over a partnership and its individual partners. Alexandre Dumas notwithstanding, we conclude that all for one does not necessarily mean one for all.

## Facts

In March 1984, federal officials arrested Seymour Sher in Los Angeles, California in connection with criminal charges brought against him in Tampa, Florida. Sher and his wife, Jessica Faith Sher, retained Thomas J. Nolan, a California attorney, to assist in Sher's defense and to help Sher locate suitable Florida counsel to try the case. Sher and Nolan flew to Tampa and interviewed numerous attorneys in April 1984. They settled on the law partnership of Johnson, Paniello & Hayes (the partnership).

Paul B. Johnson was head counsel for Sher's defense; J. Michael Hayes assisted. The third partner, Joseph M. Paniello, was not personally involved in Sher's case. Although a member of the partnership when it was hired, Paniello was not associated with the firm at the time of Sher's criminal trial or at the initiation of the present action.[1] The law firm is a Florida partnership, and all the individual defendants are Florida residents, licensed to practice law only in Florida.

At an April 27, 1984, meeting at the Tampa Airport, Sher gave Johnson a retainer check for $50,000. A few days later, Johnson sent a letter to Sher in California detailing the retainer agreement. Sher signed the letter and mailed it back to Johnson in Florida.

During the course of the representation, the partnership sent bills to the Shers at their home in California. Mrs. Sher sent checks to the partnership, drawn on a California bank, in payment for legal services. To secure these payments, and pursuant to the retainer agreement, the Shers executed a deed of trust and promissory note in favor of the partnership, encumbering the Shers' residence in Los Angeles in the amount of $75,000. Nolan held the deed, but the deed was not recorded.

Johnson travelled to California to meet with the Shers or Nolan on three occasions. He was the only partner to travel to California in connection with Sher's defense. Johnson and Hayes made several phone calls to the Shers in California, and sent them various communications by mail.

In 1985, a federal jury in Tampa convicted Sher of extortion and several RICO violations. At the time of Sher's trial, the United States Attorney's office that prosecuted Sher was also investigating Johnson for violations of the Hobbs Act. Johnson did not disclose this fact to Sher, and Sher did not discover the investigation until after his conviction. The Eleventh Circuit reversed Sher's conviction on several grounds, including that Johnson's conflict of interest between defending Sher and defending himself violated Sher's right to competent counsel. *United States v. McLain*, 823 F.2d 1457, 1463–64 (11th Cir 1987).

The Shers filed the present suit in the Central District of California, alleging legal malpractice against the partnership and each of the individual partners. The district court dismissed the action for lack of personal jurisdiction over any of the defendants. The Shers appeal. We review questions of personal jurisdiction de novo when the underlying facts are not in dispute. *Haisten v. Grass Valley Medical Reimbursement Fund*, 784 F.2d 1392, 1396 (9th Cir 1986).

## Discussion

There are two limitations on a court's power to exercise personal jurisdiction over a nonresident defendant: the applicable state personal jurisdiction rule and constitutional principles of due process. *Data Disc, Inc. v. Systems Tech. Assoc.*, 557 F.2d 1280, 1286 (9th Cir 1977). California's personal jurisdiction rule reads: "A

---

1. Robert E. Johnson, another attorney working for the partnership when it was hired, was originally named as a defendant. He was later dismissed from the suit with prejudice, and is not a party to this appeal. References to Johnson in this opinion are to Paul B. Johnson.

court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." Cal Civ.Proc.Code § 410.10 (1989). This statutory limitation is "coextensive with the outer limits of due process under the state and federal constitutions, as those limits have been defined by the United States Supreme Court." *Data Disc*, 557 F.2d at 1286 (internal quotations omitted). Jurisdiction in this case is thus constrained only by constitutional principles.

■ Due process precludes a court from asserting jurisdiction over a defendant unless the defendant has certain minimum contacts with the forum state. The overriding constitutional principle is that maintenance of an action in the forum must not offend "traditional conception[s] of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945). The defendant's "conduct and connection with the forum State" must be such that the defendant "should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

■ A court may exercise either general or specific jurisdiction over a nonresident defendant. *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414 nn. 8–9, 104 S.Ct. 1868, 1872 nn. 8–9, 80 L.Ed.2d 404 (1984). General jurisdiction applies where a defendant's activities in the state are "substantial" or "continuous and systematic," even if the cause of action is unrelated to those activities. *Data Disc.*, 557 F.2d at 1287 (internal quotations omitted). Where general jurisdiction is inappropriate, a court may still exercise specific jurisdiction if the defendant has sufficient contacts with the forum state in relation to the cause of action. *Id.*

■ The Shers do not claim that there is general jurisdiction over any of the defendants here; they argue only for specific jurisdiction. We use a three-part test to evaluate the nature and quality of defendants' contacts for purposes of specific jurisdiction:

(A) some action must be taken whereby defendant purposefully avails himself or herself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of the forum's laws;

(B) the claim must arise out of or result from defendant's forum-related activities; and

(C) exercise of jurisdiction must be reasonable.

*Cubbage v. Merchent*, 744 F.2d 665, 668 (9th Cir 1984).

■ The burden of proof is on the plaintiff to show that jurisdiction is appropriate, but in the absence of an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts. *Data Disc*, 557 F.2d at 1285 ("[I]f a plaintiff's proof is limited to written materials, it is necessary only for these materials to demonstrate facts [that] support a finding of jurisdiction in order to avoid a motion to dismiss."). Issues of credibility or disputed issues of fact may require an evidentiary hearing. *Id.* Here, the district court considered only the pleadings and other documents. Thus, we need only determine if the Shers have made a prima facie showing of personal jurisdiction, treating their allegations as true. If, however, the undisputed facts reveal sufficient contacts to support jurisdiction, the Shers will have met their ultimate burden on this issue.

The Shers allege that the following contacts are sufficient to support personal jurisdiction over the defendants in California: the execution of a retainer agreement between the Shers and the defendants in California; the collection of payments via checks drawn in California; mail and telephone communication into California; Johnson's visits to California related to the representation; the execution of a deed of trust on real estate located in California; and the appointment of Nolan as an agent of the partnership in holding the deed in California. We analyze jurisdiction over each of the defendants in turn.

## I. Jurisdiction Over the Partnership

### A. Purposeful Availment

■ In both Florida and California, a partner is an agent of the partnership when carrying on the business of the partnership in the usual way. Fla.Stat. § 620.60(1) (1989); Cal.Corp.Code § 15009(1) (Supp.1990). For purposes of personal jurisdiction, the actions of an agent are attributable to the principal. See *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 419 (9th Cir.1977). Each of the contacts that plaintiffs claim support jurisdiction are therefore contacts of the partnership, as all are within the scope of the ordinary business of the partnership.

To be subject to specific jurisdiction, a defendant must have "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985), quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). "Purposeful availment" requires that the defendant "have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir.1988).

■ Although some of Sher's claims sound in tort, all arise out of Sher's contractual relationship with the defendants. In such a case, the mere existence of a contract with a party in the forum state does not constitute sufficient minimum contacts for jurisdiction. *Burger King*, 471 U.S. at 478, 105 S.Ct. at 2185. Instead, we must look to "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" to determine if the defendant's contacts are *"substantial"* and not merely "random, fortuitous, or attenuated." *Id.* at 479, 480, 105 S.Ct. at 2185, 2186 (internal quotations omitted).

■ Here, it is undisputed that a Florida law firm represented a California client in a criminal proceeding in Florida. As normal incidents of this representation the partnership accepted payment from a California bank, made phone calls and sent letters to California. These contacts, by themselves, do not establish purposeful availment; this is not the deliberate creation of a "substantial connection" with California, *id.* at 475, 105 S.Ct. at 2183 (internal quotations omitted), nor is it the promotion of business within California. For one thing, the business that the partnership promoted was legal representation in Florida, not California. Moreover, the partnership did not solicit Sher's business in California; Sher came to the firm in Florida. There is no "substantial connection" with California because neither the partnership nor any of its partners undertook any affirmative action to promote business within California.

Other courts have come to the same conclusion in similar cases. In *Mayes v. Leipziger*, 674 F.2d 178 (2nd Cir.1982), a California law firm represented a New York resident in litigation in California. The client solicited the firm in California, and no member of the firm ever entered New York as part of the representation, but the firm did send letters and make phone calls to the client in New York. Reviewing jurisdiction in a legal malpractice suit in New York under a long-arm statute requiring "purposeful avail[ment] of the privilege of conducting activities within [New York]," *id.* at 183, the Second Circuit held that there was no purposeful availment and therefore no jurisdiction. *Id.* at 184–85. As the court said, "[t]here was no activity in New York in which defendants sought to participate." *Id.* at 185.

Similarly, in *Kowalski v. Doherty, Wallace, Pillsbury & Murphy*, 787 F.2d 7 (1st Cir.1986), a Massachusetts law firm, solicited in its own state, represented a New Hampshire client in various legal matters in Massachusetts. The client sued the firm in New Hampshire for legal malpractice. Reviewing jurisdiction under a New Hampshire long-arm statute coextensive with constitutional limitations, the First Circuit held that there were inadequate contacts to exercise jurisdiction over the firm in New

Hampshire consistent with due process. *Id.* at 9, 11.

We agree with *Mayes* and *Kowalski.* Out-of-state legal representation does not establish purposeful availment of the privilege of conducting activities in the forum state, where the law firm is solicited in its home state and takes no affirmative action to promote business within the forum state.[2] This, of course, is not the end of the matter; the Shers allege several additional contacts between the partnership and California. For example, on three occasions Johnson travelled to Los Angeles to meet with the Shers and Nolan in connection with the partnership's representation of Sher. Even this action, however, when combined with the firm's underlying representation of a California client, does not constitute purposeful availment of the privilege of conducting activities within California.

The trips to California were incident to the Florida representation. It may be said, of course, that by coming to California in connection with the representation, the partnership conducted its business in that state. We do not believe, however, that in the context of the "parties' actual course of dealing," *Burger King,* 471 U.S. at 479, 105 S.Ct. at 2185, the partnership was availing itself of any significant California privilege by coming into the state to talk to its client. The three trips to California were discrete events arising out of a case centered entirely in Florida; they appear to have been little more than a convenience to the client, who would otherwise have had to travel to Florida. We find these contacts too attenuated to create a "substantial connection" with California.[3]

The same cannot be said when we consider in addition the deed of trust. To secure the partnership's payment for Sher's legal representation, the Shers executed a deed of trust in favor of the partnership, encumbering the Shers' California home. By requiring the execution of a deed to California real estate, the partnership was looking to the laws of California to secure its right to payment under its contract with Sher. The execution of the deed "contemplated [significant] future consequences" in California: perfection of the partnership's security interest would require filing in the California recorder's office; judgment on the deed would require the application of California law; enforcement of such a judgment would require the action of a California court.

The deed represents a significant contact with California. We need not decide, however, whether standing on its own, the deed would constitute a "substantial connection" with California for jurisdictional purposes. For, looking at the partnership's entire "course of dealing" with the Shers related this contract, including the calls and let-

2. In *Brown v. Watson,* 207 Cal.App.3d 1306, 255 Cal.Rptr. 507 (1989), a California court held that it did have personal jurisdiction in a malpractice suit against a Texas law firm, solicited in Texas by California clients for representation in Texas, where no member of the firm ever travelled to California in the course of the representation. Although we address jurisdiction in this case pursuant to the California personal jurisdiction statute, we are not bound by the decisions of California courts; the ultimate question here is one of federal constitutional law. See p. 1360–1361 supra. For the reasons stated above, we disagree with the holding in *Brown* and decline to follow it. Compare *R.E. Sanders & Co. v. Lincoln–Richardson,* 108 Cal.App.3d 71, 78, 166 Cal.Rptr. 269 (1980) (mail and telephone communications to California plaintiff in connection with out-of-state investment do not constitute purposeful availment) and cases cited therein.

3. We also find the present case distinguishable from *T.M. Hylwa, M.D., Inc. v. Palka,* 823 F.2d 310, 314–15 (9th Cir 1987). In that case, we held that California had jurisdiction over a Kansas accountant who had for years been working for a California doctor. The accountant performed year-round services for the doctor's California business, and travelled to California at least once a year to work on the doctor's books. In the present case, by contrast, the services that the partnership performed for Sher concerned a single trial outside of California. Moreover, Sher and the partnership were not engaged in an ongoing employer-employee relationship; Sher hired the partnership to represent him in one case. The contract here did not contemplate the extensive future consequences typical of employment relationships. Indeed, in *Hylwa,* the law suit related to the pension that the doctor was to provide the accountant. A one-shot Florida representation does not entail this kind of continuing contact with the forum state.

ters, the trips and the deed, we conclude that the partnership "invok[ed] the benefits and protections" of the laws of California for purposes of jurisdiction. See *Burger King*, 471 U.S. at 479, 475, 105 S.Ct. at 2185, 2183 (internal quotations omitted).[4]

## B. Arising Out Of

■ The Shers' claims all relate to the alleged incompetence of the partnership's representation of Sher. The partnership's correspondence with and phone calls to Sher, a California resident, and Johnson's trips to California, were all part of that representation. The execution of the deed of trust in California real estate was a condition precedent to that representation. While most of the representation took place in Florida, it cannot be gainsaid that the Shers' claims relate to the partnership's California contacts.

In *Cubbage v. Merchent*, 744 F.2d 665 (9th Cir.1984), a California patient brought a malpractice suit against an Arizona hospital and its doctors. Although treatment had occurred entirely in Arizona, we held that there was jurisdiction over the defendants in California because the treatment, and hence Cubbage's claims, resulted from the defendants' recruitment of business in California and their participation in California's Medi–Cal program. *Id.* at 670. The connection in the present case is even closer. The representation was contingent upon the execution of the deed of trust. Moreover, at least part of the representation took place in California.

## C. Reasonableness

■ Because the partnership has purposefully directed its activities to California, personal jurisdiction is presumptively reasonable. See *T.M. Hylwa, M.D., Inc. v. Palka*, 823 F.2d 310, 315 (9th Cir.1987). The burden is on the partnership to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger*

*King*, 471 U.S. at 477, 105 S.Ct. at 2184. In this regard, we examine such factors as: the extent of defendant's purposeful interjection into the forum state; the burden on the defendant; the plaintiff's interest in convenient and effective relief; the most efficient forum for judicial resolution of the dispute; the forum state's interest in adjudicating the dispute; and the extent of the conflict with the sovereignty of the defendant's state. See *Cubbage*, 744 F.2d at 670; *Hylwa*, 823 F.2d at 315. Looking at these factors together, we must determine whether the partnership has demonstrated that jurisdiction in California would be so unreasonable as to violate due process.

—We have already concluded that the partnership purposefully directed its activities to California. The extent of its interjection into California affairs has not been great, however: a few phone calls and trips to California, and a deed of trust never recorded or levied against. This factor thus weighs, if in any direction, in favor of the partnership.

—There is a dispute as to the burden on the parties, and the most efficient forum for resolution of these claims. The Shers contend that the burden on the partnership of defending the suit in California would be minimal, since it is likely that the partnership's malpractice carrier would take up the defense, while it will be more convenient for the Shers to litigate this matter in their home state. Moreover, Sher lists in his affidavit nineteen witnesses he intends to call, all of whom reside in California. The partnership counters that it would be unable to run its Florida law practice if it were required to defend this suit in California. The partnership also asserts that all the evidence and most of the witnesses and expert witnesses are located in Florida. On this record, we cannot determine where the true burden lies, but were we to accept the partnership's allegations as true, Florida would be the more reasonable forum.

—Both California and Florida have an interest in this litigation. California has an

---

**4.** Because we hold that the contractual relationship between the partnership and Sher, including Johnson's trips to California and the execution of the deed of trust, are sufficient to estab-

lish purposeful availment, we need not consider the relevance of the alleged situs of the contract or the supposed appointment of Nolan as agent of the partnership.

interest in protecting its citizens against legal malpractice, regardless of where the malpractice occurs. Florida must regulate the activities of attorneys licensed in that state. As to these factors, we cannot say that either forum would necessarily be more reasonable.

On the whole, taking the partnership's allegations as true, Florida would be the more reasonable forum for this litigation. But it is not enough that the partnership demonstrate that some other forum is more reasonable than California, it must show a due process violation; it must show that jurisdiction in California would make the litigation "so gravely difficult and inconvenient that a party unfairly is at a severe disadvantage in comparison to his opponent." *Burger King*, 471 U.S. at 478, 105 S.Ct. at 2185 (internal quotations omitted). This it has not done. In this era of fax machines and discount air travel, requiring the partnership to defend itself in California under the circumstances as it alleges them would not be so unreasonable as to violate due process. The partnership has purposefully interjected itself into California, and the facts it alleges show no more than inconvenience, not a "severe disadvantage."[5]

The exercise of jurisdiction being reasonable, and in light of the partnership's purposeful direction of its activities to California in relation to this lawsuit, we hold that there is jurisdiction over the partnership.

## II. Jurisdiction Over the Individual Partners

■■■ The Shers contend, without benefit of case support, that because the liability of the partnership would establish the joint and several liability of each individual partner, see Fla.Stat. § 620.63 (1989); Cal.Corp. Code § 15015 (1977), jurisdiction over the partnership establishes jurisdiction over the partners. The Shers are wrong. Lia-

bility and jurisdiction are independent. Liability depends on the relationship between the plaintiff and the defendants and between the individual defendants; jurisdiction depends only upon each defendant's relationship with the forum. See *Shaffer v. Heitner*, 433 U.S. 186, 204 & n. 19, 97 S.Ct. 2569, 2579 n. 19, 53 L.Ed.2d 683 (1977). Regardless of their joint liability, jurisdiction over each defendant must be established individually.

This is the rule of *Rush v. Savchuk*, 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980). In that case, Savchuk sued Rush in Minnesota for an automobile accident that occurred in Indiana. Rush had no ties to Minnesota, but Rush's insurance carrier, State Farm, who was obligated to indemnify Rush for any liability from the accident, had sufficient jurisdictional contacts in Minnesota. The Minnesota Supreme Court aggregated the contacts of the "defending parties" and thereby found sufficient contacts to establish jurisdiction over Rush. The United States Supreme Court reversed, holding that "[s]uch a result is plainly unconstitutional.... The requirements of *International Shoe* ... must be met as to each defendant." *Id.* at 331–32, 100 S.Ct. at 578–79. That State Farm and Rush were both potentially liable did not allow the imputation of jurisdictional contacts from one to the other. The partners here stand in relation to the partnership exactly as State Farm stood relative to Rush: they have potential liability, but they are independent for jurisdictional purposes.

The Judicial Council of California also recognizes the independence of liability and jurisdiction. In its commentary to California's personal jurisdiction statute, the Council discusses cases like this one:

> A judgment rendered against [a] partnership or association will bind the joint property or assets. But a judgment may not be rendered against a partner or

---

5. As the Supreme Court pointed out in *Burger King*, any disputes about the inconvenience of a California trial are more appropriately resolved through a motion for change of venue, rather than through dismissal for lack of jurisdiction. 471 U.S. at 477 & n. 20, 105 S.Ct. at 2184 & n. 20. See also *Hirsch v. Blue Cross, Blue Shield of*

*Kansas City*, 800 F.2d 1474, 1481 (9th Cir 1986). Similarly, competing sovereignty interests are best addressed through choice-of-law rules rather than jurisdictional tests. See *Burger King*, 471 U.S. at 477 & n. 19, 483 n. 26, 105 S.Ct. at 2184 & n. 19, 2188 n. 26; *Hirsch*, 800 F.2d at 1482.

member individually unless he is subject to the jurisdiction of the state on one [or] more of the currently recognized bases [of jurisdiction over individuals] and he is properly served with process.

Cal.Civ.Proc.Code § 410.10, Judicial Council Comment (Bases of Judicial Jurisdiction over Partnerships and Other Unincorporated Associations) (1989).

■■■■ The Shers may have been misled into thinking that the contacts of the partnership may be imputed to the partners because the reverse is true: The contacts of the partners may establish jurisdiction over the partnership. This is so because each partner acts as an agent of the partnership when carrying on the business of the partnership in the usual way. See Fla. Stat. § 620.60(1) (1989); Cal.Corp.Code § 15009(1) (Supp.1990); cf. *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 419 (9th Cir.1977). However, while each partner is generally an agent of the *partnership* for the purpose of its business, he is not ordinarily an agent of his *partners.* Thus, a partner's actions may be imputed to the partnership for the purpose of establishing minimum contacts, but ordinarily may not be imputed to the other partners. In this case, the district court has jurisdiction over only those individual partners who personally established the requisite minimum contacts with California.

There are no such partners. Johnson represented Sher, a California resident, made phone calls and sent letters to California in the course of the representation, and travelled to California on three occasions to service his client. He was not, however, a beneficiary of the deed of trust; only the partnership was. Such contacts alone do not constitute purposeful availment of the privilege of conducting activities in California. See pp. 1363–1364 supra.

There is also no jurisdiction over Hayes and Paniello. Hayes represented a California client, and made phone calls and sent letters to California during the course of the representation, but he had no other relevant contacts with the state. Paniello had no involvement with the Sher representation; indeed, he wasn't even part of the firm during much of the representation. As there is no jurisdiction over Johnson, there is, a fortiori, no jurisdiction over Hayes or Paniello.

### Conclusion

Because the district court considered only the pleadings and other documents, the Shers were required to establish only a prima facie case of jurisdiction over the defendants. See *Data Disc*, 557 F.2d at 1285. However, in determining that the district court may exercise jurisdiction over the partnership, we considered only the partnership's undisputed contacts with California. Therefore, the Shers have met their burden of proving jurisdiction over the partnership. The Shers have not established even a prima facie case of jurisdiction as to the individual partners. The case is remanded for further proceedings as to the partnership and for dismissal of Johnson, Hayes and Paniello.[6]

**AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

---

6. Paniello's motion for fees and costs, pursuant to 28 U.S.C. §§ 1912 and 1927, for the filing of a frivolous appeal is denied. Each side is to bear its own costs.