**JACKSON NATIONAL LIFE INSURANCE COMPANY, as Court–Appointed Representative of the Estates of the Debtor Companies Bucyrus–Erie Company and B–E Holdings, Inc., Plaintiff,**

v.

**GREYCLIFF PARTNERS, LTD., Greycliff Partners, Alfred C. Eckert, III, Mikael Salovaara, South Street Corporate Recovery Fund I, L.P., South Street Leveraged Corporate Recovery Fund, L.P., and South Street Corporate Recovery Fund I (International), L.P., Defendants.**

No. 96–C–476.

United States District Court,
E.D. Wisconsin.

April 29, 1998.

Bruce G. Arnold, Whyte, Hirschboeck & Dudek, Milwaukee, WI, Kevin N. Starkey, Anderson, Kill & Olick, New York City, for Plaintiff.

Stephen L. Morgan, Murphy & Desmond, Madison, WI, for Defendants Greycliff Partners Ltd. & Greycliff Partners.

Howard A. Pollack, Godfrey & Kahn, Milwaukee, WI, Daniel Ross, Sharfman, Siviglia, Poret, Kook, Ross & Shanman, P.C., New York City, for Defendant Alfred C. Eckert, III.

Adam J. Kaiser, Sills, Cummis, Zuckerman, Radin, Tischman, Epstein & Gross, Newark, NJ, Stephen P. Hurley & Marcus J. Berghahn, Hurley, Burish & Milliken, Madison, WI, for Defendant Mikael Salovaara.

## DECISION AND ORDER

MYRON L. GORDON, District Judge.

Presently before the court is the February 3, 1998 recommendation and order of Magistrate Judge William E. Callahan. He recommended that Alfred Eckert's motion to dismiss the claims against him for lack of personal jurisdiction be denied and that the defendants' motion to dismiss the action for failure to state a claim be denied, without prejudice. The magistrate judge also ordered that the plaintiff's motion for leave to file a second amended complaint be granted, that the defendants' motion to transfer venue to the southern district of New York be denied, that the plaintiff's motion to file a sur-reply brief be denied, and that the "Plaintiff's Motion for a Declaration that Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure is Moot" be denied.

The plaintiff's second amended complaint, which Magistrate Judge Callahan allowed to be filed in his February 3, 1998 order, added three defendants, South Street Corporate Recovery Fund I, L.P., South Street Leveraged Corporate Recovery Fund, L.P., and South Street Corporate Recovery Fund I (International), L.P. [collectively, "South Street Funds"].

## I. Factual and Procedural Background

This case stems from a long and complicated relationship between the two companies for which Jackson National Life Insurance Company ["Jackson"] is the court-appointed representative, Bucyrus–Erie Company and B–E Holdings, Inc., [collectively, "Bucyrus"], and the defendants. Bucyrus underwent bankruptcy proceedings in the eastern district of Wisconsin in 1993 and 1994; the second amended joint plan of reorganization authorized Jackson, as the representative of Bucyrus' estates, to commence and prosecute the causes of actions set forth in the complaint. (Second Am. Compl. ¶ 2).

Defendants Salovaara and Eckert, both residents of New Jersey, were co-owners of defendant Greycliff, Ltd., a Delaware corporation that provided financial advisory services to Bucyrus. (Second Am. Compl. ¶¶ 6, 8–9.) Upon the November 1993 dissolution of Greycliff, Ltd., Mr. Salovaara and Mr. Eckert became partners in defendant Greycliff Partners ["Greycliff"], also a financial advisory service. (Second Am. Compl. ¶ 7.) Mr. Salovaara, Mr. Eckert, and Greycliff managed the South Street investment funds. (Second Am. Compl. ¶ 10.)

The underlying theme of the plaintiff's complaint is that the defendants conspired, among themselves and with Bucyrus' law firm, Milbank, Tweed, Hadley & McCloy ["Milbank"], to "plunder Bucyrus for their own gain." (Second Am. Compl. ¶ 2.) Jackson claims that the defendants "fraudulently caused" Bucyrus to enter into "highly disadvantageous" financing with the defendants. (Second Am. Compl. ¶ 2.) Specifically, the plaintiff alleges that in 1992, the senior management of Bucyrus asked Mr. Salovaara whether Bucyrus should file for Chapter 11 bankruptcy. Despite his knowledge that filing for bankruptcy was in Bucyrus' best in-

terests, Mr. Salovaara allegedly told the senior management that Bucyrus should instead enter into a secured financing transaction with the South Street Funds.

In July, 1992, Mr. Salovaara controlled and structured the sale of all of Bucyrus' manufacturing equipment to the South Street Funds for $18.3 million. Then, Mr. Salovaara arranged for Bucyrus to lease the equipment back at a rate of 23% [the "Sale–Leaseback"]. (Second Am. Compl. ¶¶ 46–47.) At the same time, the South Street Funds purchased $16.75 million of Bucyrus' Senior Secured Notes. After the closing of the Sale–Leaseback, the South Street Funds purchased in the open market $13.4 million of Bucyrus–Erie Company's senior notes, $458,-000 of Bucyrus–Erie's sinking fund debentures, and $14.8 million of B–E Holdings senior debentures. (Second Am. Compl. ¶ 62.)

Mr. Salovaara, Mr. Eckert, and Greycliff Ltd., according to the plaintiff, knew or should have known that the Sale–Leaseback would cause Bucyrus to be insolvent. (Second Am. Compl. ¶ 52.) Jackson also claims that the defendants knew that the Sale–Leaseback would give them the status of Bucyrus' dominant senior secured creditor in the inevitable financial restructuring of Bucyrus. (Second Am. Compl. ¶ 57.)

In 1993, Bucyrus announced that it would default on its debt obligations, and it retained Milbank to handle the legal side of its financial restructuring. (Second Am. Compl. ¶¶ 64, 81.) While Bucyrus was undergoing Chapter 11 bankruptcy proceedings, Milbank simultaneously, and without disclosure to Bucyrus, represented Mikael Salovaara and the South Street Funds, Bucyrus' creditors, in other matters. (Second Am. Compl. ¶¶ 66–80.) None of the defendants revealed the conflict of interest; indeed, the plaintiff argues, Mr. Salovaara affirmatively tried to keep the dual representation a secret. (Second Am. Compl. ¶¶ 71–74.)

The defendants therefore had leverage over Bucyrus' bankruptcy counsel. (Second Am. Compl. ¶ 74.) As a result, the defendants caused Milbank to draft a bankruptcy plan that was detrimental to Bucyrus and that favored the defendants. (Second Am. Compl. ¶¶ 65, 83, 87.) Moreover, Milbank

attempted, at the behest of the defendants, to obtain releases for all the defendants for any liability that they had to Bucyrus. (Second Am. Compl. ¶ 84.) Salovaara and Milbank also induced Bucyrus to enter into a settlement of Bucyrus' claims against the South Street Funds in connection with the Sale–Leaseback transaction. (Second Am. Compl. ¶ 86.)

Jackson claims that all the defendants are liable for common law fraud, that Mr. Salovaara, Mr. Eckert, Greycliff Partners, Ltd., and Greycliff are liable for their breach of fiduciary duty to Bucyrus, that Mr. Salovaara, Mr. Eckert, Greycliff Partners, and Greycliff Partners Ltd. aided and abetted the breach of fiduciary duty owed by the senior management of Bucyrus, and that all the defendants were unjustly enriched. (Second Am. Compl. ¶¶ 88–105.)

As noted above, Magistrate Judge Callahan addressed various motions in his February 3, 1998 recommendation and order. Several of the motions were nondispositive; therefore, it was appropriate for the magistrate judge, pursuant to Rule 72(a), Federal Rules of Civil Procedure, to issue an order as to those motions. The parties, though, are given an opportunity to object to the order. The district judge who receives the case, upon review of the objections, may only "modify or set aside" the magistrate judge's order on the nondispositive matters if the order is "clearly erroneous or contrary to law." Rule 72(a), Federal Rules of Civil Procedure. This standard applies to the judge's orders that Jackson be allowed to file its second amended complaint and that the defendants' motion to transfer venue be denied.

The magistrate judge also made recommendations as to the two dispositive motions: Mr. Eckert's motion to dismiss for lack of personal jurisdiction, and the defendants' motion to dismiss for failure to state a claim. If the parties file "particularized objections, accompanied by legal authority and argument in support of the objections" to the recommendations, the court engages in a de novo determination of the dispositive motions. *Banta Corp. v. Hunter Publ'g Ltd. Partnership*, 915 F.Supp. 80, 81 (E.D.Wis.

1995); *see* Rule 72(b), Federal Rules of Civil Procedure. The court, however "need only satisfy itself that there is no clear error on the face of the order" if no party files an objection to that part of the recommendation. Fed.R.Civ.P. 72 advisory committee's note.

Only Mr. Salovaara filed objections to the February 3, 1998 order. In particular, he objected to the leave to file the second amended complaint, to the denial of the motion to transfer venue, and to the recommendation that the motion to dismiss for failure to state a claim be denied. Jackson timely filed a response to Mr. Salovaara's objections. I will not address the magistrate judge's order that the plaintiff not be allowed to file a sur-reply brief and that the plaintiff's motion for a declaration be denied, because no party filed an objection to these orders. The other matters are now ready for resolution.

## II. Analysis

### Personal Jurisdiction

■ Magistrate Judge Callahan noted in his decision that all of the original defendants had moved for dismissal for lack of personal jurisdiction, but that Mr. Salovaara, Greycliff Partners, Ltd. and Greycliff Partners eventually consented to the court's jurisdiction over them and withdrew their motions. Therefore, the magistrate judge only resolved Mr. Eckert's personal jurisdiction motion. The magistrate judge found that because Greycliff Partners, a New Jersey general partnership, had consented to jurisdiction and because Mr. Eckert was a general partner in Greycliff, jurisdiction also existed over Mr. Eckert. Since Mr. Eckert has not filed an objection to this finding, I need only determine if there is clear error. I find none. The magistrate judge correctly relied on several district court cases from this circuit that explicitly held that the existence of personal jurisdiction over a partnership also establishes personal jurisdiction over the partners. *See Banta Corp.*, 915 F.Supp. at 84; *Brown v. 1995 Tenet ParaAmerica Bicycle Challenge*, 931 F.Supp. 592, 594 (N.D.Ill.1996); *Wolfson v. S&S Securities*, 756 F.Supp. 374, 377 (N.D.Ill.1991).

Moreover, Magistrate Judge Callahan rejected Mr. Eckert's reliance on *Sher v. Johnson*, 911 F.2d 1357 (9th Cir.1990), in which the court of appeals for the ninth circuit said that the court had jurisdiction over a law firm that was a partnership but not over the individual partners. The magistrate judge noted that the *Sher* court seemed to treat a partnership like a corporation, in which an officer may serve as an agent for the entity, but not for the other individual officers. By contrast, Magistrate Judge Callahan said, general partners are not only employees of the partnership, but they are agents for the *other general partners;* they do not "represent" the partnership, but they *are* the partnership.

■ I too believe that one partner's being an agent for the other partners is a crucial distinction. If a partner commits a tort in one jurisdiction, he subjects the partnership, and therefore the other partners, to liability, and presumably, to personal jurisdiction. *See Eule v. Eule Motor Sales*, 34 N.J. 537, 170 A.2d 241, 243 (N.J.1961) ("[I]t is elementary that each partner is the agent of the other and of the partnership."); *see also* N.J. Stat. Ann. § 42:1–9(1) (West 1998) ("Every partner is an agent of the partnership for the purpose of its business."). This undercuts the *Sher* court's reasoning that "while each partner is generally an agent of the *partnership* for the purpose of its business, he is not ordinarily an agent of his *partners.*" *Sher*, 911 F.2d at 1366. Because this court does have jurisdiction over the partnership, Greycliff Partners, I will accept Magistrate Judge Callahan's recommendation and deny Mr. Eckert's motion to dismiss for lack of personal jurisdiction.

### Motion to Dismiss the First Amended Complaint for Failure to State a Claim and Motion for Leave to File an Amended Complaint

The defendants, in moving for dismissal of Jackson's first amended complaint, argued that the complaint was barred by the principle of res judicata and by the settlement release that the parties entered into. Jackson's response was that its proposed second amended complaint cured any defects in the first amended complaint. The defendants, however, said that the proposed amendments would be futile. Because I agree with Mag-

istrate Judge Callahan that the two motions are related, I will treat them together. I must, however, review his determinations in two different ways. I will only disavow his allowing the plaintiff to file its second amended complaint if that decision was clearly erroneous, but I engage in a de novo determination of the magistrate judge's decision to dismiss the first amended complaint.

■ Rule 15(a), Federal Rules of Civil Procedure, states that a court should freely give parties leave to amend their pleadings. A court, though, may deny leave if there is undue delay, bad faith, dilatory motive, prejudice, or futility. *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir.1997). The magistrate judge found that none of these extenuating circumstances existed. Mr. Salovaara, in his objection, argues that the plaintiff had a dilatory motive in seeking to file another complaint. Other than merely stating that Jackson learned the new information that it adds to the complaint months before seeking leave to file the complaint, though, Mr. Salovaara does not say how Jackson's motive was dilatory. The plaintiff's not immediately asking to file a second amended complaint does not, in and of itself, show dilatory motive.

I also agree with Magistrate Judge Callahan's findings that the plaintiff did not possess bad faith, that there would be undue delay, or that there would be prejudice to the parties if the plaintiff filed a second amended complaint. According to the magistrate judge's decision, the case was not even scheduled for trial at the time that Jackson asked to file the new complaint. Indeed, there is still no trial date set in this case. While there are, or have been, several related cases across the country, including two in this branch of this court, I do not believe that the plaintiff's amending one complaint, in conjunction with filing a separate case, *see Jackson National Life Insurance Co. v. Greycliff Partners*, 97–C–1137, shows bad faith.

Mr. Salovaara also argues that the plaintiff showed bad faith by seeking leave to amend after the defendants had filed a motion to dismiss. I disagree with the defendant's suggestion that the plaintiff's conduct was akin a plaintiff's filing a motion to amend after the defendant filed a motion for summary judgment. Unlike the cases that Mr. Salovaara relies upon, the discovery deadline has not ended here. *See Sanders v. Venture Stores, Inc.*, 56 F.3d 771, 774 (7th Cir.1995); *Murphy v. White Hen Pantry Co.*, 691 F.2d 350, 353 (7th Cir.1982). Indeed, no discovery deadline has even been scheduled.

Magistrate Judge Callahan also found that it was not futile for the plaintiff to file a second amended complaint. Relying on the liberal pleading standard and on the fact that the defendants had the burden of proof to show that the amendment would be futile, the magistrate judge concluded that it was not clear, at this stage in the proceedings, that the release entered into between the parties precluded this action.

In particular, Magistrate Judge Callahan noted the co-existence of section 9.03 of Bucyrus' bankruptcy plan, which purported to release "all holders of Allowed Claims" from causes of action arising from certain transactions, and section 9.04 of the bankruptcy plan, which states that section 9.03 does not apply to Greycliff Partners, Ltd. and any of its partners and successors, or to the South Street Funds. The magistrate judge also found potential merit in the argument that section 9.03 did not apply because the plaintiff was not seeking damages based on the financial transactions themselves, but rather on the fraud that caused Bucyrus to enter into the transactions.

I agree with the magistrate judge's finding that the second amended complaint is "neither clearly insufficient nor frivolous on its face." While time may show that some or all of the plaintiff's claims will not succeed, I believe that the court should make that decision based on a fully-briefed dispositive motion, not on a finding of futility. In fact, all of the defendants, including Mr. Salovaara, the only defendant to file objections to the magistrate judge's recommendation and order, have in the last month filed motions to dismiss the *second amended complaint* for failure to state a claim. I will therefore allow Magistrate Judge Callahan's order regarding the filing of the second amended complaint to stand and will adopt his order as the order of this court.

The magistrate judge, based on his finding that the plaintiff's amendment of its complaint should be allowed, also recommended that the district court should dismiss without prejudice the defendants' original motions to dismiss for failure to state a claim. I agree; once the court has decided to allow the amended complaint to be filed, there is no need to address the motions to dismiss the now-superseded complaint. As I mentioned above, all of the defendants have already filed new motions to dismiss the second amended complaint, and the court will resolve those motions in due course. I therefore accept the magistrate judge's recommendation that the defendants' motion to dismiss for failure to state a claim be dismissed, without prejudice.

## Motion to Transfer Venue to the Southern District of New York

Magistrate Judge Callahan also gave an in-depth analysis of the defendants' motion to transfer venue, in which he denied the motion. Only Mr. Salovaara objected to this order.

I believe that the magistrate judge's order was not contrary to law or clearly erroneous. He correctly stated the factors that a court must consider when determining whether to transfer an action to another venue: the plaintiff's choice of the forum, the convenience of the parties, the convenience of the witnesses, and the interests of justice. *Roberts & Schaefer Co. v. Merit Contracting, Inc.,* 99 F.3d 248, 254 (7th Cir.1996), *cert. denied,* — U.S. —, 117 S.Ct. 1431, 137 L.Ed.2d 539 (1997); *Fondrie v. Casino Resource Corp.,* 903 F.Supp. 21, 23 (E.D.Wis.1995). A district court has broad discretion in deciding whether to grant or deny a motion for transfer. *Heller Fin., Inc. v. Midwhey Powder Co.,* 883 F.2d 1286, 1293 (7th Cir.1989). The movants have the burden of showing that the southern district of New York is a "clearly more convenient" forum. *Id.*

As to the convenience of the parties factor, Magistrate Judge Callahan said that because Bucyrus's business records were located in Milwaukee, it was convenient for the plaintiff to have filed the case here. He also observed that the defendants did not show that transferring the case to New York would do any more than shift the inconvenience of the parties. The magistrate judge's second finding was that the defendants did not meet their burden of showing that the convenience of its non-party witnesses also favored having the case heard in New York. Finally, the magistrate judge opined that the interests of justice leaned in favor of the plaintiff because Wisconsin jurors had more of an interest in the case and because the parties would not receive a faster trial in the southern district of New York. I believe that Magistrate Judge Callahan's analysis was sound.

Mr. Salovaara, the only defendant who objected, argues that the filing of the second amended complaint "shifts the focus of the allegations" to the southern district of New York. (Salovaara Obj., at p. 5.) Specifically, Mr. Salovaara points the court to the convenience of the witnesses residing in New York. The problem with Mr. Salovaara's argument is that he does not state the identity of these witnesses who will be allegedly inconvenienced by this court's hearing the case. *See Heller,* 883 F.2d at 1293 (finding that the movant must "clearly specify the key witnesses to be called and make at least a generalized statement of what their testimony would have included"). He instead states, in a rather conclusory fashion, that "[a]ll witnesses to these events are located within one hundred miles of New York City and the Southern District of New York courthouse." (Salovaara Obj., at p. 6.)

Because I agree with the magistrate judge's order and because Mr. Salovaara has not met his burden of showing that the filing of the second amended complaint changes the analysis, I will adopt the February 3, 1998 order regarding transfer of venue as the order of this court.

Therefore, IT IS ORDERED that Mr. Eckert's motion to dismiss for lack of personal jurisdiction be and hereby is denied.

IT IS ALSO ORDERED that the magistrate judge's order allowing the plaintiff to file its second amended complaint be and hereby is adopted as the order of this court.

IT IS FURTHER ORDERED that the defendants' motion, dated April 29, 1996, to

**1170**

dismiss the complaint, for failure to state a claim, be and hereby is denied, without prejudice.

IT IS FURTHER ORDERED that the magistrate judge's order denying the defendants' motion to transfer this action to the venue of the southern district of New York be and hereby is adopted as the order of this court.