In The



Court of Appeals



Ninth District of Texas at Beaumont



 ______________________ 


 

NO. 09-07-435 CV


 ______________________



LANGSTON, SWEET & FREESE, P.A.,


SWEET & FREESE, P.L.L.C. AND RICHARD FREESE, Appellants



V.



CLETUS P. ERNSTER, III, CLETUS P. ERNSTER, III, P.C.


AND R.G. TAYLOR, II, P.C. & ASSOCIATES, Appellees






On Appeal from the 58th District Court


Jefferson County, Texas


Trial Cause No. A-177,199






OPINION
 In this lawsuit over division of litigation expenses, two law firms and an individual
attorney filed special appearance motions challenging the trial court's jurisdiction over them. 
The trial court denied the motions, and this interlocutory appeal followed. See Tex. Civ.
Prac. & Rem. Code Ann. § 51.014(7) (Vernon Supp. 2007). We conclude the trial court has
jurisdiction over the law firms but not the individual attorney.

The Litigation


 The law firms of Taylor, Davis & Ernster (TDE), (1) Langston, Sweet & Freese, P.A.
(LSF), and Danks, Simon & Teeuwissen (DST) entered into a letter agreement in 2000
concerning Dillard's Department Store. The three firms agreed they would bear all costs and
expenses of litigation against Dillard's in proportion to their respective contingent fee
interests. (2)

 Cletus Ernster of TDE filed lawsuits against Dillard's in Texas. He later demanded
payment of expenses incurred in litigating those lawsuits from the other parties to the letter
agreement. 


 Ernster sued appellants for breach of contract, fraud, and negligent misrepresentation,
and sought a declaratory judgment. Robert G. Taylor II P.C. also sued appellants on these
causes of action, and added promissory estoppel, unjust enrichment, quantum meruit, and
joint enterprise liability. (3) Ernster's and Taylor's pleadings encompass the letter agreement
and its breach, and representations that Dennis Sweet allegedly made in Texas to Ernster,
Taylor, and intervenor Legal Wizards. Appellants Richard Freese, LSF, and S&F contend
Texas courts do not have either specific or general jurisdiction over them. (4) 

Personal Jurisdiction


 The plaintiff must plead sufficient allegations to invoke jurisdiction under the Texas
long-arm statute. Moki Mac River Expeditions, Inc. v. Drugg, 221 S.W.3d 569, 574 (Tex.
2007). The nonresident defendant then bears the burden of negating all bases of jurisdiction
in those allegations. Id. When a trial court does not issue findings of fact with its special
appearance ruling, all facts supported by the evidence and necessary to support the ruling are
presumed to have been found by the trial court. BMC Software Belgium, N.V. v. Marchand,
83 S.W.3d 789, 795 (Tex. 2002). The existence of personal jurisdiction is a question of law
an appellate court determines de novo. Id. at 794.

 Texas trial courts may exercise in personam jurisdiction over a nonresident defendant 
if (1) the Texas long-arm statute, section 17.042 of the Texas Civil Practice and Remedies
Code, authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent
with federal and state constitutional due-process guarantees. See Tex. Civ. Prac. & Rem.
Code Ann. § 17.042(1) (Vernon 1997); Moki Mac, 221 S.W.3d at 574. Section 17.042(1) 
authorizes personal jurisdiction over a nonresident defendant who does business in Texas. 
IRA Res., Inc. v. Griego, 221 S.W.3d 592, 596 (Tex. 2007). A nonresident "does business"
in Texas if it: (1) contracts by mail or otherwise with a Texas resident and either party is to
perform the contract in whole or in part in this State; (2) commits a tort in whole or in part
in this State; or (3) recruits Texas residents for employment inside or outside of Texas. Tex.
Civ. Prac. & Rem. Code Ann. § 17.042 (Vernon 1997). The list in section 17.042 is not
exclusive. BMC Software, 83 S.W.3d at 795. "[T]he statute's broad, doing-business
language reaches only as far as these federal due-process criteria permit: (1) the defendant
must have established minimum contacts with the forum state, and (2) the assertion of
jurisdiction must comport with 'traditional notions of fair play and substantial justice.'" IRA
Res., Inc., 221 S.W.3d at 596 (citing BMC Software, 83 S.W.3d at 795). Appellants
challenge only the minimum contacts prong of the due process requirements. 

 The defendant's contacts with the forum state may give rise to either general or
specific jurisdiction. BMC Software, 83 S.W.3d at 795. General jurisdiction is established
when the defendant has made continuous and systematic contacts with the forum. Id. at 796. 
The United States Supreme Court has explained that where contacts are less pervasive, the
court may exercise "specific" jurisdiction "in a suit arising out of or related to the defendant's
contacts with the forum." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408,
414 n.8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Under specific jurisdiction, a defendant
must have made minimum contacts with Texas by purposefully availing itself of the privilege
of conducting activities here, and its liability must arise from or be related to those contacts. 
See Moki Mac, 221 S.W.3d at 576 (citing Am. Type Culture Collection, Inc. v. Coleman, 83
S.W.3d 801, 806 (Tex. 2002)). 

 In considering purposeful availment, (1) only the defendant's forum-state contacts
matter, not those of anyone else; (2) the contacts must be purposeful, not simply random,
isolated, or fortuitous; and (3) a nonresident defendant must seek some benefit, advantage,
or profit by "availing" itself of the jurisdiction, thereby impliedly consenting to its laws. IRA
Res., Inc., 221 S.W.3d at 596 (citing Michiana Easy Livin' Country, Inc. v. Holten, 168
S.W.3d 777, 785 (Tex. 2005)). For specific jurisdiction, there must be a substantial
connection between the defendant's forum contacts and the operative facts of the litigation. 
See Moki Mac, 221 S.W.3d at 585.

The Issues


 Appellants contend they are not subject to specific jurisdiction because there is no
substantial connection between their forum contacts with Texas and the litigation's operative
facts. They argue the drafting of the contract in Texas is merely a unilateral activity that does
not confer jurisdiction, and the contract's focus is on lawsuits filed in Mississippi, not Texas. 
Appellants contend Dennis Sweet's contacts in Texas were not in performance of the letter
agreement and therefore not substantially connected to the litigation's operative facts. They
argue further that the exchange of communications between appellees and Dennis Sweet is
mere fortuity. Appellants also assert they are not subject to general jurisdiction because of
the lack of continuous and systematic contacts with Texas.

"Dillards Department Store Litigation Letter Agreement"



 Appellants argue the letter agreement is the litigation's operative fact and makes
Mississippi the "hub of the parties' activities." The contract agreement is as follows:

 Pursuant to the telephone conversation between Anthony Simon,
Dennis Sweet and Cletus Ernster on Wednesday, July 12, 2000, Danks Simon
& Teeuwisson shall receive 20% of the gross attorney fees on all cases against
Dillards Department Store brought in by the Danks Simon & Teeuwissen law
firm (example - Consuelo Jones) and 10% of the gross attorney fees on all 
other Dillards cases involved in this litigation.

 Taylor, Davis & Ernster, Langston, Sweet & Freese and Danks Simon
& Teeuwissen shall bear all costs and expenses in proportion to their
respective contingent fee interests in the Dillards Department Store cases.

 The Dillards litigation refers to cases being brought against Dillards
Department Store arising out of the wrongful detention, false imprisonment,
negligence and/or profiling of Dillards patrons.

 Filing of all pleadings will be handled through Dennis Sweet's office. 


The agreement is signed by Ernster on behalf of TDE, Dennis Sweet on behalf of LSF, and
Simon on behalf of DST. An Exhibit A, also signed by the parties, provides three examples
of division of attorney fees --- one of the subjects of the letter agreement. One example cites
referral fees to be paid to Arkansas, Texas, or Louisiana attorneys. 

 The three firms agreed to proportionally bear all costs and expenses in litigation
against Dillard's, which the agreement defines as referring to cases being brought against
Dillard's on a specific subject matter. Appellants argue the agreement encompasses only
those litigation expenses associated with cases filed in Mississippi by Dennis Sweet's office,
and rely on the last sentence in the agreement, which states that "[f]iling of all pleadings will
be handled through Dennis Sweet's office." Appellees contend the letter agreement covers
cases filed in Texas; they also argue appellants are improperly attempting to have this Court
rule on the merits of the underlying litigation in an appeal from a special appearance ruling. 

 The ultimate issue in this appeal is one of federal due process, not contract law. 
Appellants argue the contract cannot be the basis for personal jurisdiction in Texas because
the contract makes Mississippi the "hub" of the parties' activities. No state is mentioned in
the letter agreement, however. (5) The agreement does not state the location of Dennis Sweet's
office or where the litigation is to be filed. From the record, it appears Dennis Sweet has
offices in both Mississippi and Alabama, and Sweet is licensed in Alabama, Mississippi, and
Washington D.C. Sweet explained in his deposition that he was admitted pro hac vice in a 
case against Dillard's in Beaumont, Texas, and he came to Beaumont for a June 2004 trial. 
He testified the presence of his initials on the paperwork in the Texas case indicated the
pleadings filed in the Texas court came from his file. It is apparent that the agreement, as
reflected in the examples regarding division of the attorney fees, covers claims originating
in Texas and referred by Texas attorneys. The agreement does not provide that the only
litigation expenses required to be shared are those incurred in lawsuits filed in Mississippi. 

 Appellants argue their activities in Texas were not undertaken in furtherance of the
letter agreement, and therefore are not substantially connected to the litigation's operative
facts. They rely on Moncrief Oil Int'l, Inc. v. OAO Gazprom, 481 F.3d 309 (5th Cir. 2007). 
In Moncrief Oil, one of the parties to the contract was a Texas resident, but "all the
agreements were executed in Russia, with a Russian corporation, concerning a Russian joint
venture, to develop a Russian gas field." Id. at 310, 312. Under those facts, the Fifth Circuit
Court of Appeals held the "mere fortuity that one company happens to be a Texas resident,
coupled with that company's unilateral performance, is not enough to confer jurisdiction." 
Id. at 313 (citing Holt Oil & Gas Corp. v. Harvey, 801 F.2d 773, 778 (5th Cir. 1986)). 

 This case presents significantly different jurisdictional contacts. Sweet, on behalf of
his firm, was involved in the litigation against Dillard's in Texas. Sweet does not contest the
Texas court's exercise of jurisdiction over him in his individual capacity. He testified he
thought Ernster, a Texas resident, drafted the contract; the litigation project was Ernster's;
and "[Ernster] was running it." Sweet also testified he came to Houston and Beaumont on
the cases against Dillard's. He testified he came to Ernster's office in Texas in April 2005
to discuss litigation expenses that are now the subject of this lawsuit. At that time, Sweet met
with Ernster (6) and heard a presentation from a contractor, Legal Wizards, concerning the work
it had done on the cases and the money the law firms allegedly owed for that work. Sweet
testified he had authority to make representations to appellees about the common expenses
under the agreement.

 Subsequently, Ernster and Taylor traveled to Sweet's Mississippi office for further
discussion of the issue. As a result of that visit, Sweet wrote to Legal Wizards in Houston. 
In that letter, he accepted full responsibility for $36,612.15 in expenses and stated he would
pay Legal Wizards's bill by October 4, 2005. Sweet did not pay the bill. (7) Legal Wizards
intervened in the lawsuit and sought payment from Sweet, LSF, S&F, and Ernster and his
firm. 

 Sweet testified he spent the night in a Beaumont hotel during a trial in Texas, and
incurred expenses paid for "by Cletus Ernster or someone[.]" Sweet acknowledges he did
not reimburse Ernster, Taylor, or Washington for the hotel room. After the Beaumont trial
against Dillard's ended in a mistrial, Sweet conducted the depositions of three witnesses in
the case. Sweet further testified that Omar Nelson, Sweet's associate, came to Texas to work
with Ernster and Mickey Washington on the cases against Dillard's. Omar Nelson was
working for LSF and S&F. Sweet affirmed that if transcripts reflect Nelson was present in
Texas on the litigation against Dillard's, Sweet sent him. 

 Sweet's and Nelson's Texas contacts, on behalf of LSF and later S&F, were
purposeful and for the advancement of the litigation against Dillard's: Sweet and Nelson
were present in Texas working on the litigation and incurring litigation expenses in those
cases. The operative facts of the litigation include the 2000 letter agreement, the
representations made by Sweet regarding litigation expenses, the presence of defendants and
their representatives in Texas working on the cases against Dillard's, and defendants'
communications with Texas residents regarding the disputed litigation expenses. 
Defendants' alleged liability -- payment of defendants' share of litigation expenses in the
cases against Dillard's -- arises from or is related to those forum contacts. Appellants sought
benefits, advantages, and profits from their activities in Texas. A substantial connection
exists between the forum contacts and the operative facts of the litigation. 


S&F


 S&F argues it was not a party to the letter agreement and should not be deemed to
have established minimum contacts with Texas. Sweet testified LSF "separated" in October
or November 2003, and S&F was formed. The litigation was then handled on a day-to-day
basis by the new firm of S&F, with LSF retaining its interest in the litigation. Sweet testified
he had primary responsibility for any work involving Dillard's, and he took it with him when
he went to S&F and then later to Sweet & Associates. Sweet indicated his correspondence
regarding the dispute over litigation expenses was written on behalf of S&F and LSF.

 The litigation flowed from LSF to S&F; Sweet continued to work on the litigation and
made trips to Texas on cases involving Dillard's while he was an S&F partner. See Nikolai
v. Strate, 922 S.W.2d 229, 240 (Tex. App.--Fort Worth 1996, writ denied) (An attorney's
contacts, undertaken on behalf of a professional corporation in which the attorney was a
shareholder, were imputed to the professional corporation for jurisdictional purposes.). S&F
purposely availed itself of the privilege of conducting activities in Texas, and its alleged
liability arises from or is related to those contacts. 

Richard Freese


 Richard Freese argues that he was not a party to the letter agreement and did not
establish minimum contacts with Texas. Freese was a partner in LSF and S&F, but we find
no evidence he worked on the cases in Texas, or that he performed any work on or acted as
the partnerships' agent for cases against Dillard's. Though Sweet's actions may be imputed
to the partnership entities, those actions are not, without more, imputed to Freese individually
for personal jurisdiction purposes. See generally PHC-Minden, L.P. v. Kimberly-Clark
Corp., 235 S.W.3d 163, 174 (Tex. 2007) ("[P]ersonal jurisdiction involves due process
considerations that may not be overridden by statutes or the common law."); see Asshauer
v. Farallon Capital Partners, L.P., No. 05-05-01219-CV, 2008 WL 367619, at *9 (Tex.
App.--Dallas Feb. 12, 2008, no pet. h.) ("[A] partnership's contacts are not imputed to
partners with no individual contacts with the forum state."). Other jurisdictions have treated
this issue similarly. See generally Sher v. Johnson, 911 F.2d 1357, 1366 (9th Cir. 1990)
(Discussing California and Florida law, the court stated that "a partner's actions may be
imputed to the partnership for the purpose of establishing minimum contacts, but ordinarily
may not be imputed to the other partners."); but see Durkin v. Shea, 957 F. Supp. 1360, 1367
(S.D.N.Y. 1997) (Under New York law, a partner is an agent of his fellow partners, and
"general principles of agency law can appropriately inform the jurisdictional inquiry."). We
find no evidence of Freese's involvement in any matters regarding the litigation in Texas
against Dillard's. See generally Daynard v. Ness, Motley, Loadholdt, Richardson & Poole,
P.A., 290 F.3d 42, 44-59 (1st Cir. 2002) (In a dispute over legal fees, court discusses implied
agency and ratification in context of personal jurisdiction under the Massachusetts long-arm
statute.) A party's liability alone does not establish the jurisdiction of the forum. The record
does not support specific jurisdiction over Freese.

 Appellants also challenge general jurisdiction. A general jurisdiction inquiry "involves
a 'more demanding minimum contacts analysis'. . . with a 'substantially higher' threshold
. . . ." PHC-Minden, L.P., 235 S.W.3d at 168 (quoting CSR, Ltd. v. Link, 925 S.W.2d 591,
595 (Tex. 1996), and 4 Wright & Miller, Federal Practice & Procedure § 1067.5
(2007)). Ordinarily, the defendant '"must be engaged in longstanding business in the forum
state, such as marketing or shipping products, or performing services or maintaining one or
more offices there; activities that are less extensive than that will not qualify for general in
personam jurisdiction."' Id. (quoting 4 Wright & Miller, Federal Practice &
Procedure § 1067.5). We focus solely on Freese's contacts with Texas up to the time the
lawsuit was filed. See PHC-Minden, L.P., 235 S.W.3d at 169. 

 Appellees contend the trial court has general jurisdiction over Freese because he
opened an office in Texas and has traveled to Texas to practice law. Freese's firm was
created after Ernster's lawsuit was filed on August 23, 2006. The relevant period of contacts
for general jurisdictional purposes ends at the time the lawsuit is filed. Id. 

 Appellees also contend Freese traveled to Texas to practice law. They cite Sweet's
testimony stating Freese made "numerous" trips to Texas concerning resilin cases he was
prosecuting with another counsel. Beyond this, we find no evidence of when or how many
trips were made, or of the extent of his contacts with Texas. The record is insufficient to
establish general jurisdiction over Freese. 

Conclusion


 We affirm the trial court's order denying the special appearance motions of Langston,
Sweet, & Freese and Sweet & Freese. Richard Freese's contacts are insufficient to support
either general or specific jurisdiction on this record. We reverse the order denying his special
appearance, and instruct the trial court to dismiss Richard Freese from the lawsuit for lack
of personal jurisdiction. 

 AFFIRMED IN PART; REVERSED IN PART.

 ____________________________

 DAVID GAULTNEY

 Justice

 

Submitted on February 14, 2008

Opinion Delivered May 8, 2008


Before McKeithen, C.J., Gaultney and Horton, JJ. 

1. It appears from the record that at the time of the filing of Ernster's third-party
petition, Taylor and Ernster were no longer in the same firm.
2. Effective March 1, 2005, Rule 1.04 of the Texas Disciplinary Rules of Professional
Conduct was amended to add specific requirements for attorneys who refer cases to other
attorneys and who divide the fees on those cases. See Tex. Disciplinary R. Prof'l
Conduct 1.04(f) (adopted by order of October 17, 1989, effective Jan. 1, 1990, amended by
order of Jan. 28, 2005, effective Mar. 1, 2005, and reprinted in Tex. Gov't Code Ann., tit.2,
subtit. G, app. A, art. 10, § 9, Rule 1.04 (Vernon Supp. 2007)). The parties entered into the
2000 letter agreement prior to the amendment to Rule 1.04, and no party argues the
agreement is unenforceable.
3. Mickey Washington, a Texas resident, filed suit in Texas against Ernster, whom
Sweet described as Ernster's "now partner/ex-employee[.]" Washington sought a declaratory
judgment that he is not liable for the debts of Ernster or the firm. Ernster answered
Washington's lawsuit and filed a third-party petition against, among others, LSF, Sweet &
Freese, Richard Freese, Dennis Sweet, and Robert G. Taylor II P.C. Taylor filed a cross-claim against LSF, S&F, Dennis Sweet, and Freese. 
4. Dennis Sweet did not file a special appearance. Richard Freese is an Alabama
resident. LSF and S&F are Mississippi law firms. 
5. An "Exhibit A," attached to the Letter Agreement and executed at a different time,
sets out examples of attorney fee distributions and references attorneys from Texas,
Arkansas, and Louisiana.
6. Sweet is uncertain who was present at the meeting. At one point, he said he met with
Ernster, Taylor, and "the Legal Wizards representative." At another point, Sweet testified
he met with Ernster, Mickey Washington, and Legal Wizards. 
7. Appellants contend that because the trial court dismissed the claims of intervenor
Legal Wizards prior to the denial of appellants' special appearances, Sweet's alleged
misrepresentations cannot form the basis for specific jurisdiction. The "Order of Partial
Dismissal" dismissed Legal Wizards's claim against Sweet, LSF, and S&F, but not against
Ernster and his firm.